[No. 3023.   Decided January 4, 1901.]

THE STATE OF WASHINGTON, *on the Relation of C. F. White, v.* BOARD OF STATE LAND COMMISSIONERS.

PROHIBITION, WRIT OF—WHEN LIES—LEASE OF HARBOR AREAS.

Prohibition will not lie to restrain the board of state land commissioners from discharging the administrative duties imposed upon them in the leasing of the harbor areas of the state under the provisions of Laws 1897, p. 255, § 53.

*Original Application for Prohibition.*

*Greene & Griffiths,* for relator.

*Thomas M. Vance,* Ass't Attorney General, and *Winstock & Israel,* for respondents.

The opinion of the court was delivered by

WHITE, J.—This matter comes on for final determination upon the application of the relator for a writ of prohibition against the board of state land commissioners,

which writ has heretofore issued, and is now returnable. The relator briefly claims that heretofore, and while he was a taxpayer in the town of Cosmopolis, Chehalis county, and engaged in the lumbering and shipping business along the water front of the harbor area of said town, Eugene Bell and W. H. Abel made a written request of the respondent board for permission to lease from the state certain harbor areas; that the board made an order that such areas should be let to the highest and best bidder, and directed the county auditor of Chehalis county to offer such privilege of leasing at public auction to the highest bidder on the 25th of June, 1898; that said auditor some time between the 24th and 25th days of June, 1898, posted on the wall inside his office three paper writings, containing, respectively, the descriptions of the tracts of harbor areas so to be offered, and wherein it was stated that the same would be offered at public auction on said 25th of June to the highest bidder; that on said date, in the afternoon, said auditor offered said privileges at public auction, and there was but one bidder, and one bid, at $10, offered for each of the tracts, averaging $30, the same being made by and on behalf of one Eugene Bell for one of said tracts, and one Henry Rosmond for the others; that after said bids had been accepted by said county auditor, and said privileges sold to said parties, this relator filed with the said auditor a written bid of $20 for each of said tracts; that his bid was forwarded to the board of state land commissioners, with the returns of said sale, and that he filed with the said board a protest against the acceptance of the bids made, and claimed the right to purchase the privilege; that his protest was objected to by said Bell and Rosmond, and upon hearing before the board of land commissioners the objection was sustained, and the right

to lease awarded to Bell and Rosmond. Of this action of the board he complained in his petition, and asked the writ prohibiting the board from further acting in the matter, alleging that the notice of the intention to so sell such privilege was illegal and insufficient. Upon the respondent's answer, this court referred the questions of fact raised thereby to Hon. O. V. Linn, superior judge of Thurston county, for the purpose of having the evidence taken and the facts determined. That judge heard the testimony, and filed his findings in this cause.

This court directed a reargument of the case on the demurrer to the application and writ, as well as on the findings of Judge Linn. The application for the writ was originally made in this court. By § 1, art. 4, of the state constitution, this court has power to issue writs of prohibition. When our constitution was adopted, the courts and text writers of this country generally held that the writ was to restrain the exercise of unauthorized judicial or quasi judicial power, and that the remedy might be invoked against any court, or body of persons, board, or officers assuming to exercise judicial or quasi judicial powers, although not strictly or technically a court. High, Extraordinary Remedies (3d ed.), § 764a. Undoubtedly this is the function the writ is to perform under our constitution. The writ, as so understood, was to prohibit proceedings of a judicial nature, but not to prohibit merely administrative, executive, or ministerial acts. High, Extraordinary Remedies, §§ 769, 782; Spelling, Extraordinary Relief, §§ 1722, 1744. "And, to warrant granting the writ to any organized body other than a court, it is necessary that the acts sought to be prohibited are purely judicial, and not executive, administrative, or legislative." Spelling, Extraordinary Relief, § 1744. If the court or organized body in the particular is acting only in an

administrative or executive capacity, although in other
matters it may exercise judicial powers, a writ of prohibi-
tion is not the proper remedy, however illegal such admin-
istrative or executive acts may be. Spelling, Extraordinary
Relief, § 1722; *State ex rel. West v. Justices of Clark
County Court,* 41 Mo. 44. In some particulars the act
of 1897 confers upon the board judicial powers. In the
matter complained of by the respondent, the powers are
purely administrative or executive. Section 53 of the
act (Laws 1897, p. 255) provides that:

"The harbor line commission shall have the power to
lease the right to build and maintain wharves, docks and
other structures upon or within any harbor line area abut-
ting upon tide or shore lands which have been sold, or
which may hereafter be sold or leased as provided in this
act, for a term not exceeding thirty years, upon such cov-
enants and conditions as the commission shall prescribe.
The said commission in any and all such leases, shall re-
serve to the state of Washington the right to regulate,
either under rules of the commission or legislative enact-
ment, or by both methods, the rates of wharfage, dockage
and other tolls to be imposed by the lessee upon commerce
for any of the purposes for which said leased area may
be used, and the right, as above mentioned, to prevent
extortion, discrimination and exclusive privileges. Said
commission shall require a bond with sufficient surety, to
be approved by the commission, in such sum as may be
prescribed by the commission, conditioned for the faith-
ful performance by the lessee of all the terms and condi-
tions of the lease under such rules and regulations as the
commission may prescribe. The said commission shall
have power at any time to summon sureties upon any
bond and to examine into the sufficiency of the bond, and
if found by the commission to be insufficient, the com-
mission shall require the lessee to file a new and sufficient
bond within thirty days after receiving notice from the
commission, under penalty of immediate forfeiture of the
lease. The commission shall have power to annul or can-

cel any lease upon a breach of its conditions by the lessee. The state hereby reserves the right to cancel any and all leases upon payment to the lessee of the value of his improvements made on any leased area; provided, that this section shall not be held to apply to the cancellation of leases by the commission for fraud or breach of any covenants of the lease or failure to file and keep a good and sufficient bond with said commission; but in all such cases the improvements, if any, shall become the property of the state. Any lessee desiring to erect any wharf, dock or other structure upon any such leased area shall prepare and file with the said commission plans and specifications of such proposed improvement and showing its proposed location on the leased area, and no such wharf, dock or structure shall be constructed until such plans, specifications and location shall be approved by said commission. There shall not be any artificial filling in of such area or any deposit of rock, earth, ballast, refuse, garbage or other matter within such area, except as may be provided by law, or upon approval in writing by said commission. If the person, association or corporation having the preference right to lease any of the harbor line areas does not exercise such right within such time as may be prescribed by the commission and under its rules and regulations, then the said commission may, in its discretion, provide for the leasing of such harbor area to the highest and best bidder; provided, that the commission may reject any and all bids when in its judgment the sum bid is too low. The rent derived from such leases shall be paid into the state treasury under such regulations as the state commission may prescribe, and shall constitute a fund to be used as the legislature may direct; provided, that after the expiration of one year, if the parties who have leased any of said areas do not commence to build wharves, docks or make such other improvements as provided in this act, the commission may cancel the lease and re-lease the same under the provisions of this act."

It will be observed that the commissioners, in their discretion, may reject any and all bids, if too low; that

full control relative to leasing is given to the board. In leasing they are not acting without or in excess of their powers, and if, as a matter of fact, the board should accept the bid of the relator because it is a better bid, or should refuse it, in so doing they would be exercising executive or administrative functions only; and, no matter how illegal such action might be, the writ of prohibition would not restrain it.

"The writ of prohibition will not be issued as of course, nor because it may be the most convenient remedy. Nor will it be allowed to take the place of an appeal, or perform the offices of a writ of review. It is a preventive remedy, and as such is bounded by rigid rules, and is only issued in cases of extreme necessity. The remedy is employed only to restrain the courts and inferior tribunals exercising judicial functions from acting without or in excess of their jurisdiction; and, if the court or tribunal sought to be restrained has jurisdiction of the subject-matter in controversy, a mistaken exercise of its acknowledged powers will not justify the issuance of the writ." *State ex. rel. Lewis v. Hogg,* 22 Wash. 646 (62 Pac. 143); *State ex rel. Cann v. Moore, ante,* p. 115 (62 Pac. 441).

Of course, in doing these acts the board must exercise judgment, but this does not necessarily make the act judicial. As was said by the supreme court of Indiana in the case of *Wilkins v. State,* 113 Ind. 514 (16 N. E. 192), quoted at length by this court in *Bellingham Bay Imp. Co. v. New Whatcom,* 20 Wash. 59 (54 Pac. 774):

"If the appellant were correct in his assumption, then every school examiner who examines an applicant for license, every clerk who accepts and acts upon an affidavit, every auditor who accepts an abstract of title when he loans school funds, and every officer who approves a report, would exercise judicial functions. That they do, in some degree, act judicially, is true, and so does every officer, from the governor to constable, who is invested with dis-

cretionary powers; for the governor, when he issues a requisition for a fugitive from justice, decides many things, and the constable, when he executes a writ or a warrant, exercises a discretion; but no one of these officers exercises judicial judgment, in the sense that a court or judge does."

For the reason that in leasing the land in question the board acts only in an administrative or executive capacity, we think the writ in this case was improperly issued, and must be set aside. For that reason, we will not now pass upon the legal capacity of the relator to bring this action, or the power of the board to lease the tract in question, or the sufficiency of the notice given.

Let the order be that the writ be set aside and this action be dismissed, and the defendants recover their costs.

DUNBAR, C. J., and REAVIS, FULLERTON and ANDERS, JJ., concur.