[No. 9304. · Department One.    February 4, 1911.]

THE STATE OF WASHINGTON, *on the Relation of W. H. Abbott et al., Plaintiff*, v. E. W. ROSS, *Commissioner of Public Lands, Respondent.*[1]

PUBLIC LANDS—OYSTER LANDS—DEEDS — CANCELLATION — POWERS OF OFFICERS. The state land commissioner is authorized to hear and determine an application for the cancellation of a state deed for oyster lands, by Rem. & Bal. Code, § 6804, providing that if oyster lands sold by the state shall be used for any other purpose than oyster culture, the deed shall be cancelled upon application to the state land commissioner.

CONSTITUTIONAL LAW—JUDICIAL POWERS—ENCROACHMENT ON JUDICIARY—PUBLIC LANDS—OYSTER LANDS—POWERS OF LAND COMMISSIONER. Judicial powers are not conferred on the state land commissioner by Rem. & Bal. Code, § 6804, authorizing him to cancel a state oyster deed and determine that the land shall revert to the state when the lands have been used for purposes other than oyster culture; since the state deed is not absolute but conditional and contains the conditions of the defeasance, and administrative officers may be clothed with *quasi* judicial powers, having no authority to fix a penalty.

PUBLIC LANDS—OYSTER LANDS—DEEDS — CANCELLATION — NOTICE. Under Rem. & Bal. Code, § 6804, providing for the cancellation by the commissioner of public lands of state oyster land deeds for-

[1]Reported in 113 Pac. 273.

breach of condition, but which fails to provide the form of notice to be given to the grantee, any suitable notice of application for the cancellation is sufficient.

STATUTES—IMPLIED REPEAL—PUBLIC LANDS — DEEDS — CANCELLA-TION.  Rem. & Bal. Code, § 6804, providing for the cancellation of a state oyster land deed for breach of condition is not impliedly re-pealed by other general laws relating to tide lands somewhat inconsistent therewith; since there is no plain legislative intent to that end, and the act is not among the acts expressly repealed and may exist without any necessary conflict with the general acts.

Application filed in the supreme court December 20, 1910, for a writ of prohibition directed to the commissioner of public lands, to prevent the hearing of an application to cancel a sale of tide lands.  Denied.

*Kerr & McCord* and *Hadley, Hadley & Abbott,* for relators, contended, *inter alia,* that the lands of relators being no longer public lands, the alleged notice and subpoena were without authority and void. 19 Cyc. 690, and note; 13 Ency. of Law, p. 1077; Rem. & Bal. Code, § 6613; Mechem, Public Officers, § 627; *Palmer v. Peterson,* 56 Wash. 74, 105 Pac. 179; *Shattuck v. Hastings,* 99 Mass. 23; *Rollins v. Riley,* 44 N. H. 9; *Welsh v. Callvert,* 34 Wash. 250, 75 Pac. 871.  The commissioner of public lands was wholly without jurisdiction of the subject-matter in the premises.  Laws 1895, p. 38, ch. 24, § 9; Rem. & Bal. Code, § 6804; Const., art. 4, § 6; *Welsh v. Callvert, supra; State ex rel. Bussell v. Callvert,* 33 Wash. 380, 74 Pac. 573; *Iron Silver Min. Co. v. Campbell,* 135 U. S. 286; *Emblen v. Lincoln Land Co.,* 184 U. S. 660. The provision in relators' deed for a reversion in case the lands are used for purposes other than as provided in the act, is a condition subsequent.  32 Cyc. 1096; *Archibald v. New York Cent. etc. R. Co.,* 157 N. Y. 574, 52 N. E. 567.  The state must be a party to any proceeding to declare a for-feiture or reversion whereby the lands would revert to the state.  *Powers v. Webster,* 47 Wash. 99, 91 Pac. 569.  The authority to institute such an action is by statute vested in the attorney general only.  Laws 1909, pp. 767, 768.  It is

beyond the power of even a court to declare relator's deed cancelled on the two principal grounds set forth in the petition and notice and subpoena, to wit: (1) That the lands are not oyster lands nor suitable for the cultivation of oysters. *Welsh v. Callvert, supra; State v. Heuston,* 56 Wash. 268, 105 Pac. 474. (2) That relators have failed to cultivate oysters thereon. *State ex rel. Bussell v. Callvert, supra.*

The *Attorney General,* and *Geo. A. Lee, Assistant,* for respondent.

*J. E. Horan* and *Frank C. Owings, amici curiae.*

FULLERTON, J.—The legislature of the state of Washington, by an act approved March 2, 1895, provided for the sale of certain tide lands, then denominated tide lands of the third class, for the purposes of oyster culture. The act limited the quantity of land that could be sold to a single purchaser to one hundred acres, fixed the purchase price thereof at the rate of one dollar and twenty-five cents per acre, and required the applicant to accompany his application with a sworn statement to the effect that the lands sought to be purchased would be used for oyster planting purposes only. The act also provided:

"If from any cause any tract or tracts, parcel or parcels of land purchased under the provisions of this chapter shall become unfit and valueless for the purposes of oyster planting, the party having so purchased and being the in possession of the same may upon certifying such fact under oath to the commissioner of public lands and to the auditor of the county wherein such lands are situated and also upon filing under oath a certificate of abandonment of such tract or tracts, parcel or parcels of land, in the office of each of said officials, such party shall then be entitled to again make purchase as hereinbefore provided; or if said land be used by the purchasers or any successors in interest of such purchaser in whole or in part for other than the purposes specified in this chapter, then upon application by any citizen to the state land commissioner such sale may be canceled, and the land shall revert to the state and shall be subject to sale as

herein provided, but not to such defaulting purchaser or such defaulting successor in interest." Rem. & Bal. Code, § 6804.

On December 6, 1909, the relator W. H. Abbott, proceeding pursuant to the provisions of the foregoing act, applied to the commissioner of public lands, to purchase certain specifically described tide lands situated in Skagit county, alleging in his application that the lands described were suitable for oyster culture, and that it was his purpose to use the same for oyster planting purposes only. Thereafter, on March 22, 1910, after due proceedings before the commissioner of public lands, a deed was issued to the applicant conveying to him the land described, subject to the provisions of the act.

On December 3, 1910, one J. E. Horan filed a sworn complaint with the commissioner of public lands in which he alleged that the lands sold to the relator were not in fact lands suitable for the purposes of planting and cultivating oysters and that the relator had not used them for such purposes, but had, on the contrary, used them for hunting purposes, having caused to be erected thereon a number of shooting blinds. Upon filing the complaint, the commissioner of public lands, acting in his official capacity, gave notice to each of the relators that such a complaint had been filed, and cited them to appear on a day named and show cause, if any they had, why the deed should not be canceled, the sale held for naught, and the lands reverted to the state, as provided by the statute authorizing their sale. On service of this notice upon the relators, they filed the present application for a writ of prohibition against the commissioner of public lands, asking that he be prohibited from hearing the cause or in any manner interfering with the title acquired by them in virtue of the deed.

The relators base their claim to a writ on the contention that the commissioner is without jurisdiction to inquire into the matters set forth in the complaint on file before him, and

is without power or jurisdiction to set aside the deed or revert the lands to the state. In support of these contentions, it is argued, first, that the act itself does not purport to vest this power in the commissioner of public lands; and second, that if it does so attempt to vest it, that part of the act is unconstitutional and void. Upon the first question suggested, we have no doubt that the legislature intended to vest the power to cancel the sale in the commissioner of public lands. By referring to the quotation from the statute above given, it will be noticed that the sale is canceled on application made to the commissioner, which to our minds plainly implies that the commissioner himself shall make the cancellation.

The second question suggested is of more difficulty. It is claimed that this provision of the act is void because it is an attempt to confer judicial powers upon a purely administrative officer. But we think this objection not well taken. It will be observed that the act does not provide for an absolute conveyance to the purchaser of lands sold under its provisions. It is provided that the land so purchased must not be used in whole or in part for purposes other than the purposes of planting and cultivating oysters, and that if it be so used the sale may be canceled and the lands reverted to the state, and that the deed executed to evidence the purchaser's title shall "contain the conditions of defeasance in this act provided," (Id., § 6800). To determine, therefore, whether the land shall revert to the state, the commissioner of public lands has but to determine a question of fact, having no discretion as to the penalty that shall be imposed; the law itself imposing the penalty. This is but to exercise quasi judicial functions, not those ordinarily termed judicial by the authorities defining that term. Moreover, it is essential that the executive and administrative officers of the state have and exercise discretionary and quasi judicial powers. The business of the state, if the rule were otherwise, could hardly be carried on, and it is not possible that the constitution makers thought they were denying these officers these powers

when they enacted the provision in question. As we said in *Bellingham Bay Imp. Co. v. New Whatcom*, 20 Wash. 53, 54 Pac. 774:

"It can readily be understood that if all quasi judicial power or discretion were taken from administrative or executive officers, and every question of this kind, however small its importance might be, had to be submitted to a law trial, the courts would be incumbered with useless litigation, and the administration of the government would become so expensive that it would be intolerable."

In the case cited it was contended that the provisions of the Laws of 1893, p. 226, authorizing a city council of a city to render a decision determining the regularity of a reassessment, was unconstitutional as an attempt to confer judicial powers upon such bodies contrary to the constitution, but the court held the law valid. So, also, the railroad commission act was attacked on like grounds, it being contended that the attempt to vest power in that body to determine the necessity for railroad track connections and to direct such connections was void under this provision of the constitution, but the contention was held not sound, the court saying:

"While there is no question that the constitution of the state recognizes a division of the powers of the state into three separate co-ordinate departments, viz., legislative, executive, and judicial, it is well established that the special jurisdiction of each is understood to be applied in a limited sense, and it is not meant that they must be kept wholly and entirely distinct without any connection or dependence whatever or connecting link between them. Or, as was said by this court in *Bellingham Bay Imp. Co. v. New Whatcom*, 20 Wash. 53, 54 Pac. 774, if all quasi judicial powers were taken from administrative and executive officers, the courts would be incumbered with useless litigation, and the administration of the government would become so expensive that it would be intolerable. This question was examined at length in that case, and many cases reviewed, and the logic of the opinion and the conclusion reached is opposed to appellant's contention. In addition to this, no case has been cited by appellant, nor have

we been able to find any, which sustains the view contended for." *State ex rel. Oregon R. & Nav. Co. v. Railroad Commission*, 52 Wash. 17, 100 Pac. 179.

It is manifest, as these cases indicate, that if the courts must be called upon to decide every question involving discretion or judgment, that it will have work thrust upon it exceeding its capacity, and that the state will be greatly hampered in the ordinary administration of its every day affairs. While it may not be easy to point out the dividing line between powers that are so clearly judicial that they must be exercised by the courts and powers that pertain to the due administration of the laws by the executive and administrative officers of the state, we are confident that the powers conferred by this act belong to the latter class rather than the former.

The relators complain of the manner by which they were attempted to be brought before the commissioner. It seems that a notice in the form of subpoena was served upon them, reciting the contents of the complaint against them, and citing them to appear at a date named therein. It is urged that this is proceeding without statutory authority. But we think this is not a fatal objection. The statute, while not very clear, seemingly contemplates notice to the defaulting party, although no form of notice is prescribed by the act. This being true, any timely notice which informs him of the accusation against him and gives him an opportunity to defend against such accusation would be sufficient. The notice in this instance complied with these requisites.

Counsel representing interests adverse to the relators have, by leave of court, filed a brief in which it is contended that the statute of 1895, under which the relators purchased, was repealed by implication by the subsequent statutes relating to the sale and disposal of tide lands. A number of statutes, it is true, have been enacted since 1895 which relate to the sale and disposal of the tide lands of the state, but they relate to

tide lands generally and provide for the disposition of the state's fee in the same; while the statute here in question is limited and special, both as to the character of the tide lands to be conveyed and the purposes for which they may be conveyed. The rule is that a general statute does not repeal a special one, unless such is the plain legislative intent, even when they may contain somewhat inconsistent provisions. But here no such intent can be inferred. On the contrary, the inferences are all the other way. The general statutes in terms recite the acts intended to be repealed, and this special act is not enumerated, thus plainly negativing any intent to work its repeal. Moreover, the two acts can exist together, each operative in its own sphere without any necessary conflict.

We think the application for the writ should be denied, and it is so ordered.

PARKER and MOUNT, JJ., concur.

RUDKIN, J. (concurring)—I have grave doubts as to the validity of a statute conferring power on the commissioner of public lands to declare a forfeit of a grant of state lands for a breach of a condition subsequent. I also doubt whether prohibition will lie against that officer; but if so, I am convinced that this court has no original jurisdiction to grant the writ. *State ex rel. White v. Board*, 23 Wash. 700, 63 Pac. 532; *Winsor v. Bridges*, 24 Wash. 540, 64 Pac. 780; *State ex rel. Pelton v. Ross*, 39 Wash. 399, 81 Pac. 865. In *Winsor v. Bridges, supra*, the court said,

"We conclude that original jurisdiction to issue the statutory writ of prohibition against the board of state land commissioners to arrest their contemplated action in selling or leasing the lands in controversy is in the superior court, and not in this court, and we have no original jurisdiction in the premises, and for that reason we will not pass on the merits of the application. These can only be inquired into on appeal. The writ should be denied, for lack of original jurisdiction, and these proceedings dismissed."

For these reasons, I concur in the judgment denying the writ.

Gose, J., concurs with Rudkin, J.