[No. 18801. Department One. July 28, 1924.]

THE STATE OF WASHINGTON, *on the Relation of Roy H. Harris etc., Plaintiff*, v. J. GRANT HINKLE, *as Secretary of State, Respondent.*[1]

COURTS (56, 67)—PROHIBITION (15, 16) — APPELLATE COURTS — ORIGINAL JURISDICTION OF SUPREME COURT—QUASI JUDICIAL ACTS OF PUBLIC OFFICERS. Under Const., Art. IV, § 4, conferring original jurisdiction upon the supreme court to issue prerogative writs necessary to the complete exercise of its appellate and revisory jurisdiction, and Art. IV, § 6, conferring original jurisdiction on both the superior and supreme courts to issue such writs, the supreme court has original jurisdiction to issue a writ of prohibition directed against an executive officer attempting to exercise unlawful judicial or quasi judicial acts; and the unlawful act of the secretary of state in accepting the withdrawal of signatures from an initiative petition, after it has been filed with him, is such a judicial or quasi judicial act and will be prohibited by the supreme court.

STATUTES (2-3)—INITIATIVE LAWS—SUBMISSION—WITHDRAWAL OF SIGNATURES FROM PETITION—POWERS OF SECRETARY OF STATE. The secretary of state, after the preliminary checking and acceptance for filing of an initiative petition to submit a proposed law to the electors, under Rem. Comp. Stat., §§ 5406-5414, has no power to accept withdrawals of signatures from the petition, in view of the absence of any such express authority, the explicit instructions as to his duties, and the resulting confusion and delays that might defeat the purpose of the act.

Application for a writ of prohibition, filed in the supreme court, July 16, 1924, to prohibit the secretary of state from accepting withdrawals of signatures from an initiative measure. Granted.

[1] Reported in 227 Pac. 861.

*Winter S. Martin,* for plaintiff.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondent.

HOLCOMB, J.—This is an original application for a writ of prohibition to prohibit and arrest the action of the secretary of state, who, it is alleged, threatens to receive and honor withdrawals of signatures from petitions for initiative measure No. 49, the so-called "School Bill."

The secretary of state has said, as alleged in the petition, that he will not consider the names of those signers for the measure who have filed written requests of withdrawal in his office, and that he will permit those who wish to withdraw their names to do so at any time before he completes the canvass and count of the names on the petitions.

Section 5406, Rem. Comp. Stat. [P. C. § 2759], relating to the initiative and referendum proceedings, reads:

"Every initiative and referendum petition, before it is filed with the secretary of state as hereinafter provided, shall be filed with the officer having custody of the registration books containing the signatures, addresses and precinct of the registered voters of the city, town or precinct, as the case may be, where the persons who have signed such petition claim to be legal voters. Upon the filing of any such petition it shall be the duty of such officer to forthwith compare or cause a deputy to compare the signatures, addresses and precinct number on such petition with said registration books. The officer or deputy making the comparison shall place his initials opposite the signature of those persons who are shown by the registration books to be legal voters, and shall certify upon the last signature sheet of such petition that the signatures so initialed are the signatures of legal voters of the State of Washington, and shall sign such certificate and attach there-

to the seal of the registration officer, if such officer have a seal, and return such petition to the person filing the same upon demand. The omission to fill any blank shall not prevent the initialing or certification of any name, if sufficient information is given to enable the officer, by a comparison of the signatures, to. identify the voter. Every such petition bearing the signatures of persons residing in precincts where registration of voters is not required, before it is filed with the secretary of state, shall be submitted to and initialed by a justice of the peace, road supervisor, member of a school board or a postmaster residing in such precinct in the form provided in section 5404. It shall be the duty of such justice of the peace, road supervisor or member of a school board to examine and initial and certify the signatures of legal voters on any such petition upon demand.''

Section 5407 [P. C. § 2760] provides that, when the signatures of fifty thousand legal voters or the signatures of legal voters, equal in number to, or exceeding ten per centum of, the whole number of electors who voted for governor at the regular gubernatorial election last preceding, are attached to such petition, the proponents of the measure may submit the petition to the secretary of state for filing in his office.

Section 5408 [P. C. § 2761] provides that the secretary of state, upon any such petition being submitted to him for filing, shall examine the same; and if, upon examination, the petition appears to be in proper form, and to bear the requisite number of signatures of legal voters, and if the petition is an initiative petition proposing a measure to be submitted to the people for their approval or rejection at the next ensuing general election, and is submitted not less than four months before such general election, he shall accept and file the petition in his office.

Section 5409 [P. C. § 2762] provides for an appeal from the refusal of the secretary of state to file the

petition to the superior court for Thurston county.

Section 5410 [P. C. § 2763] provides that, if the secretary of state accept and file any such petition, he shall bind, volume and number the volumes of the same, and stamp on each thereof the date of filing.

Section 5414 [P. C. § 2767] provides that, when the petition shall be an initiative measure to be submitted to the people, the secretary of state shall canvass and count the names on such petition within thirty days after filing, and incorporates the provisions of sections 5411, 5412, and 5413 [P. C. §§ 2764, 2765, 2766], the first of which provides for the canvassing of the petition in the presence of representatives of the advocates and opponents of the measure respectively, should they desire to be present, and count the names of certified legal voters on such petition; if he find some name signed to more than one petition, he shall reject both names from his count. If, at the conclusion of the count and canvass, it shall appear that the petition bears the requisite number of certified legal voters, he shall so certify; section 5412 provides that the secretary, while making the canvass, shall keep a record of all names appearing on the petition which are not certified to be legal voters, and of all names appearing more than once upon the petition. Section 5413 provides for an appeal by any person dissatisfied with the determination of the secretary that the petition contains less than the requisite number of signatures of legal voters, within five days, to the superior court for Thurston county, and provides for proper writs in the premises.

The petition avers that, on July 3, 1924, an initiative petition for submission to the people of initiative measure No. 49, containing the names of approximately 56,000 legal voters of the state of Washington,

which had been given a ballot title, was presented to the secretary of state; that, prior to the submission to respondent, petitioner and others associated with him had caused each of the petitions to be filed with the officers having the custody of the registration books containing the signatures, addresses and precincts of the registered voters who had signed the petitions before submission to respondent, and they had been compared, checked and certified by such registration officers in the manner and form required by law; that thereafter on July 7, 1924, respondent, having examined the initiative petition so submitted, and the same appearing to be in proper form and to bear the requisite number of names of legal voters thereon, accepted and filed the same in his office; and ever since that day the measure has been on file in respondent's office, awaiting his official canvass and count, as required by law; that respondent is required by law to canvass and count the names on such petitions within thirty days after he shall file the same in his office; if he shall find the petitions to be sufficient, it is his duty to certify to each of the county auditors of the various counties the serial number and ballot title of the initiative measure to be voted on at the next ensuing general election; that it is the duty of respondent to cause to be printed, at least sixty days before the election, a true copy of the serial designation, number, ballot title, text of, and arguments for and against such measure, in pamphlet form, and it is his further duty to transmit by mail, with postage prepaid, to every voter in the state one of such pamphlets not less than fifty-five days before such election; that the next general election in the state of Washington will be held on the first Tuesday following the first Monday in November next, to wit: November 4, 1924; that the printing so required must be com-

pleted at least twenty days prior to November 3, 1924, to wit: by September 4, 1924; and respondent must transmit by mail the printed pamphlets not less than fifty-five days before the election, to wit: by September 9, 1924; that the thirty-day period within which the canvass and count of such petitions expires is August 7, 1924; that petitioner and those associated with him are entitled to have initiative measure No. 49 submitted to the electors of the state at the next general election on November 4, 1924.

It is then alleged that, since the measure was submitted to respondent, a number of persons have written him requesting him to remove their names from the petition, notwithstanding the petitions had theretofore been filed with the registration officers of the various cities and precincts where the signers thereon lived, and the registration officers had compared, initialed and certified the same, and each of them, and the petition had thereupon become a public document; that after the petitions had been formally accepted as public documents by respondent in his office, certain persons continued to write him requesting withdrawals of their names from initiative measure No. 49; that respondent has stated that he intends to grant the requests of persons claiming the right to withdraw their names from the petitions, until the time when it would be necessary for him to officially check and certify all the names remaining upon the petitions as legally qualified voters and signers thereon, of which time he intends to give notice publicly and to the advocates and opponents of the measure in question. It is also alleged that, if the withdrawals continue at the rate they are being presented to respondent, it is probable that respondent upon his final canvass and count will find the number of names so registered below the

legal minimum required for initiative measures to be submitted to the people, and that he will refuse to submit this measure to the people upon the ground that it does not contain the number of signatures required by law; that there will then be insufficient time for an adequate remedy by appeal to the superior court of Thurston county for relief, as provided in § 5413, *supra,* and that, if the counting and canvassing of the signatures to the petition is delayed beyond the thirty-day period allowed the secretary of state for such action, it will be impossible to prepare, print and circulate the four hundred thousand pamphlets required containing a copy of the measure, before September 9, 1924. Other matters are alleged as constituting a violation of the rights of petitioner which would be so affected by the threatened action of respondent that there would be no adequate remedy by appeal or otherwise, so that the measure might be submitted to the people as directed by the constitution and statutes of the state.

The *Attorney General* demurs to the petition on two grounds: That the court has no jurisdiction of the subject-matter; and that the petition does not state facts sufficient to constitute a cause of action.

The secretary of state also submits his affidavit setting forth the details of his intended action upon the initiative petition. In his affidavit it is stated that, after checking over for uncertified signatures and then for duplicate signatures, and totaling the net legal signatures on the petition, withdrawals will then be counted; that it is intended that each withdrawal be thoroughly examined, scrutinized and compared with the original signature. If such withdrawal is found to be bona fide, a record is kept of the same by which, at the completion of the operation, the total number of

withdrawn signatures may be tabulated; that then a final count of the legal signatures will be made and totaled. In order that the examination, comparison and checking of withdrawals with the original signatures can be expeditiously made, and the final count completed within the thirty days allowed by law, a general notification will be given in advance to the public, as well as to the advocates and opponents of the measure, that no more requests for withdrawals will be entertained after the date, which will be the date upon which it is estimated that the checking, examination and comparison will be commenced. It is also stated that an effort will be made to fix this date sufficiently far in advance of the expiration of the thirty-day period as to enable the canvass and final count to be completed before the thirty-day limitation has expired.

It may be well to note now that there is no provision in the statute either for additions to initiative petitions or for withdrawals therefrom, at any time. Nor is there any provision in the statute that the secretary of state shall entertain requests for withdrawals and remove signatures from petitions, or compare requests for withdrawals with original signatures on initiative petitions; nor to determine the genuineness of such signatures, or anything of the kind.

The first matter to be determined under the first ground of respondent's demurrer is the matter of our jurisdiction.

The *Attorney General* very fairly submits that

"It may be conceded that the statutory remedy by appeal to the superior court within five days after the completion of respondent's canvass and count under § 5414, *supra,* will not furnish a 'plain, speedy and adequate remedy in the ordinary course of law' so as to warrant the prohibition under § 1028, Rem. Comp. Stat."

But the *Attorney General* contends that, if there is any jurisdiction for a writ of prohibition against respondent, it is only in the superior court, and that petitioner has mistaken the *forum.*

Our first duty is to inquire as to our power to grant the writ, for jurisdiction cannot be conferred upon this court either by stipulation, waiver, or consent; *State ex rel. Bennett v. Taylor,* 54 Wash. 150, 102 Pac. 1029, and we are compelled to go to the constitution for the source of our original jurisdiction.

Section 4, article IV, of the state constitution, provides:

"The supreme court shall have original jurisdiction in habeas corpus and quo warranto and mandamus as to all state officers, . . . The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction."

We have held, also, that the writ of prohibition which this court has power to grant, under the above constitutional provision, is the common law writ prevailing under the territorial statutes in existence when the constitution was adopted, which writ was directed solely against acts of judicial or quasi-judicial character, and that this right has not been enlarged by the subsequent enactment of § 1027, Rem. Comp. Stat. [P. C. § 8386], under which a writ of prohibition may be directed against the proceedings of an executive or administrative character as well as judicial or quasi-judicial acts. *State ex rel. White v. Board of State Land Commissioners,* 23 Wash. 700, 63 Pac. 532; *Winsor v. Bridges,* 24 Wash. 540, 64 Pac. 780; *State ex rel. Pelton v. Ross,* 39 Wash. 399, 81 Pac. 865; *State ex rel. Bennett v. Taylor,* 54 Wash. 150, 102 Pac. 1029; *State ex rel. Abbott v. Ross,* 62 Wash. 82, 113 Pac. 273; *State*

*ex rel. Murphy v. Taylor,* 101 Wash. 148, 172 Pac. 217.

In conformity with these rulings, we have held in some of the above cited cases that, where the state land commissioner or the board of state land commissioners, were acting within the apparent scope of their authority in the administration of the land grants of the state, they would not be prohibited by this court, because they were acting in ministerial, administrative, or executive capacities, and the original jurisdiction as to such matters under the constitution exists only in the superior courts of the state, under § 6, article IV, of the constitution. Under these sections of the constitution, both this court and the superior court have jurisdiction to grant such writs, but this court limited itself under the provision affecting its jurisdiction as it existed in territorial days when the matter sought to be restrained or prohibited involved only the administrative, executive or ministerial duties of state officers.

We have never refused jurisdiction in a case where a judicial officer or tribunal was attempting to exercise unlawful judicial acts, and it makes no difference what sort of officer or tribunal is attempting to exercise such power. *State ex rel. Bennett v. Taylor, supra,* was followed in *State ex rel. Murphy v. Taylor, supra,* in both of which cases it was said that writs of this sort will only be issued to restrain the exercise of an unauthorized judicial or quasi-judicial act.

The question then arises, what sort of an act is the act complained of on the part of respondent—merely a ministerial or administrative act, or a judicial or quasi-judicial act? It cannot be a mere ministerial act, for that is an act done under the instructions of a superior officer or the sovereign, and in obedience thereto. The act here is not like that of a clerical or administrative officer approving or disapproving a bond; or a record-

ing officer determining whether a paper presented for
filing is one proper to be filed. Nor is it an act of
authorized discretion, such as the acts of the registra-
tion officers under this law in comparing and certifying
genuine and spurious signatures on the petitions when
filed with them. Nor is it a matter of administrative
discretion, such as are involved in the management of
the state's land grants as entrusted to the state land
commissioner or the board of land commissioners.

An examination of the petition filed with respondent
to ascertain if it is in proper form for filing, complying
with the formalities of the law as to its form and con-
tents, and to ascertain if it has a sufficient number of
signatures on the face of the petition to entitle it to be
filed, involve administrative acts and matters of dis-
cretion. As to them this court would not attempt to
regulate the conduct of respondent by an extraor-
dinary writ in advance of the act of the secretary, but
would only attempt to rectify any erroneous, capri-
cious, or arbitrary act after it had been made under the
provisions of the law relating to appeals, or some of
the extraordinary remedies provided in the law.

Under the allegations of the petition, and the state-
ment of respondent's affidavit, what he is proposing to
do appears to us to be wholly illegal, unauthorized, and
involving no element of discretion or of the adminis-
trative powers conferred upon him by the law in rela-
tion to this matter. His assuming to accept with-
drawals from petitions is much the same as a judicial
or quasi-judicial permission to amend or supplement
the petition. Hence, it not being authorized and not
within the powers of respondent, he is attempting
to exercise a quasi-judicial function of authorizing
amendments or supplements to the petition after it
was filed with him.

We are therefore of the opinion that, under the constitutional provisions conferring original jurisdiction upon this court to issue such writ, or at common law, the writ of prohibition would lie against this state officer to prevent such usurpation of power and unlawful exercise of a quasi-judicial function.

As to the merits of the matter we have little doubt. In *State ex rel. Mohr v. Seattle,* 59 Wash. 68, 109 Pac. 309, we held that, under a referendum provision of the city charter of Seattle, although there was no provision therein for withdrawals from a petition, such withdrawals might be made before the jurisdiction of the officer to whom it is addressed attaches, but not after final action had been taken thereon. In that case, the signatures to the petition were, under the provisions of the charter, examined and verified by the city comptroller. The charter imposed no duty upon the city council except to submit the question to the voters for approval or rejection at a general or special election, after the comptroller's report had been made to the council. In that case, it appears that, after the petition and the comptroller's report thereof had been transmitted to the city council, and before any further action was taken by that body, further petitions were filed demanding that withdrawals from the referendum petition be granted. Upon receipt of the petitions containing these additional withdrawals, the city council referred the referendum petition and the comptroller's report and the withdrawal petitions to its corporation committee. The corporation committee then requested the city comptroller to compare and check over the signatures to the different petitions with a view of ascertaining how many of the signatures to the referendum petitions were also on the withdrawal petitions. This last examination having been made, the comp-

troller reported back to the committee that 979 had withdrawn their names in withdrawal petitions filed with him and referred to the council, and 760 additional names on withdrawal petitions had been filed subsequent to that report. On the report of this committee, the city council determined that the referendum petition did not contain the requisite number of signatures after deducting all the withdrawals therefrom, and rejected it. The court observed:

"From the foregoing statement it will be seen that the original referendum petition contained a sufficient number of signatures; that the petition was still sufficient after deducting the withdrawals made or filed before the comptroller made his report and transmitted his petition to the city council, but was insufficient if the withdrawals made and filed subsequent to the report of the comptroller are considered and allowed."

Again (on page 74) it was observed:

"Both the initiative and referendum provisions of the Seattle Charter provide that the City Comptroller shall verify the sufficiency of the signatures to the petition. . . . After the petition and report have been transmitted to the city council that body has no duty or discretion in the matter except to submit the question to a vote at a general or special election. The inference from this is that nothing but a sufficient petition shall be transmitted to the city council. In other words, the comptroller determines the sufficiency of the petition in all cases."

The action of the city council was accordingly reversed in refusing to submit the ordinance to the voters for their approval or rejection and continuing to act under its provisions.

The situation in that case and the reasoning of the case sustains the petitioner in this case. Here, as will be noted from reading the statute set forth herein, and as was said in *State ex rel. Case v. Superior Court,* 81

Wash. 623, 143 Pac. 461, Ann. Cas. 1916B 838:

" . . . the whole duty of the secretary is prescribed, so far as his canvass and count of the names is concerned, in these words of the statute: He shall 'proceed to canvass and count the names of certified legal voters on such petition. If he find the same name signed to more than one petition, he shall reject both names from the count. . . .' "

And, also that,

"The Secretary of State is without authority to inquire into, or decide, the question of the names upon the petitions being the signatures of legal voters, in the light of the express provisions of the statute committing that question for decision of local certifying officers and when the local certifying officer has decided that names upon the petition are the signatures of legal voters and has evidenced that decision by proper certificate in the manner provided by law, his decision is absolutely final, so far as the power of the secretary of state to ignore the same is concerned."

In other words, the local certifying officers exercise that quasi-judicial function of determining the authenticity of all signatures.

Under these statutes, the secretary of state is given no power to compare signatures. Should he attempt to permit withdrawals and then compare signatures on the withdrawing petitions with the original signatures on the petition, there is opened a wide door for frauds on the part of opponents of the measure. Besides, if he permit withdrawals at any time during the period when he is canvassing the vote, he should not arbitrarily close the door for withdrawals at an arbitrary time fixed by him, but should allow the whole time, or thirty days, which he is given for the canvassing and certifying of the petition, and that would lead to endless confusion. The petitions then could never be finally examined until after the expiration of the thirty-

day period. The law in other respects could not be complied with. The result might be that the desires of petitioners for very worthy and beneficent measures for submission to the people at the general elections might be frustrated.

It is thought by the *Attorney General* that our decision in *Rominger v. Nellor,* 97 Wash. 693, 167 Pac. 57, sustains the position of respondent. In that case we held that electors signing petitions for the recall of a county commissioner had the right to withdraw their names prior to the date fixed by the county auditor for canvassing the names. It was held in that case, following the *Mohr* case, *supra,* and the great weight of authority, that electors voluntarily signing petitions might voluntarily withdraw therefrom, at least until the petition had been acted upon. But in that case the law provided that the petitions should be filed with the county auditor, and that he should notify the parties interested that he would proceed to canvass the petitions at a time named. The petitions in that case were filed November 6, 1916, and on that day the auditor notified the parties interested that he would proceed to canvass the petitions on Wednesday, November 16, 1916. Between the date of filing and the date fixed by the order for canvassing the petitions, a number of signers on the petitions filed petitions addressed to the county auditor directing him to withdraw their names from the recall petitions and not to count them in making the canvass of the petitions. Over the objections of appellants, the auditor refused to count the persons who had indicated their purpose to withdraw, the result being an insufficient number of signatures left thereon to authorize the calling of a special election. The auditor made a certificate to that effect and notified appellants as the filers of the petition thereof.

It was contended in that case that the withdrawal petitions should have been filed before or along with the original petitions, but it was held that, by the provisions of the statute, the auditor should fix a time at which he would commence the canvass of the petitions, and no delay in the canvass was caused by recognizing the withdrawals filed prior to that time, whether filed before or after the filing of the original petition. It will be observed that, in that case, the auditor, after filing the petition for recall, must fix a time for proceeding to canvass the petitions. Before that date, petitions for withdrawal duly filed with the county auditor withdrew certain names which had been signed to the petition. No rights had attached up to that time.

In the case at bar, unless the filing of the petitions with the secretary of state be considered as the final act of the petitioners in presenting the proposed legislation, thus preventing any subsequent supplements, additions, or alterations to the petition, except such as are found by due judicial proceedings as provided in the act, unutterable confusion is bound to arise and the aims of the law would often be frustrated.

While there is considerable variation among the decisions of the courts as to the correct stage of the proceedings at which this right may be exercised, and the question is largely influenced by the nature of the proceeding and the terms of the statute under which it is exercised, so far as our examination of a great many cases which have passed upon the matter shows, even in those cases which allow the most liberal margin of time for withdrawal, they seem to recognize that this right to withdraw may not be exercised so as to defeat the jurisdiction after jurisdiction of the body authorized to act has been determined; and while the greatest liberality should be shown to voluntary signers on such

petitions to voluntarily withdraw at some time before their signatures become final, we are confident that they should not be allowed to withdraw their signatures voluntarily so as to arrest the petition on its way to the voters after it has received the number of signers required by law, been examined, found sufficient, and the only thing incumbent upon the secretary of state is to canvass the vote upon it and certify the result.

Many cases have been cited by both sides of this controversy as to the right to withdraw, and the time for the exercise of that right, among which there is great discordance. At any rate, they do not seem to fit the situation of this case under our statute. We are confident, however, that the secretary of state has no right to permit withdrawals after petitions are received, examined and preliminarily filed in his office, and his attempt to do so is a manifest abuse of power which should be prohibited.

The peremptory writ will issue.

MAIN, C. J., TOLMAN, FULLERTON, and PARKER, JJ., concur.