[No. 18931.    Department One.    October 4, 1924.]

THE STATE OF WASHINGTON, *on the Relation of Robert M. LaFollette et al., Plaintiff,* v. J. GRANT HINKLE, *as Secretary of State, Respondent.*[1]

COURTS (56, 57)—MANDAMUS (2)—APPELLATE COURTS—ORIGINAL JURISDICTION—ADEQUATE REMEDY BY APPEAL.  Under Const., Art. 4, § 4, giving the supreme court original jurisdiction to issue prerogative writs to state officers, the court will grant a writ of mandate prohibiting the secretary of state from certifying nominations for a general election, where an appeal could not be taken in time to furnish an adequate remedy.

ELECTIONS (28)—NOMINATIONS—POLITICAL PARTIES—ORGANIZATION AND MOTIVES—TRIAL BY COURTS.  Under the statutes of this state, the courts cannot inquire into the motives for the organization of new parties and the nomination of candidates therefor, or prohibit the certification of the nominations on the ground that voters would be misled and that the motives were bad.

SAME (29)—NOMINATIONS—CERTIFICATION—UNAUTHORIZED USE OF NAME—RIGHT TO PROHIBIT USE.  The unauthorized use of the name of an individual in the designation of the name of a political party nominating candidates for political office, is unlawful and will be prohibited at the instance of such person.

Application filed in the supreme court September 26, 1924, for a writ of mandamus to prohibit the secretary of state from certifying the names of persons nominated by a political party for various state offices. Granted in part.

*Bradford & Snyder* and *W. D. Lane,* for relators.

*The Attorney General, R. G. Sharpe, Assistant, Charles E. Claypool, Z. B. Rawson,* and *William A. Gilmore,* for respondent.

BRIDGES, J.—By this procedure the relators seek a writ of mandate prohibiting the secretary of state from certifying to the proper officers of the state the names

[1]Reported in 229 Pac. 317.

of persons nominated to fill various state offices (but not presidential electors), such nominations being made by the "LaFollette State Party." The petition alleges that Mr. LaFollette appears as an individual and as an independent candidate, under the party name "Progressive Party," for the presidency of the United States, and that the other relators are qualified voters and taxpayers of this state and are the duly organized and acting members of the state executive committee of the Progressive Party in the state of Washington, and as such exercise, and have a right to exercise, control of the affairs of that party and constitute the governing board thereof; that the Progressive Party is a political organization regularly formed and existing under the laws of this state; that, at a convention duly called and held on the 9th day of September, 1924, national electoral candidates were selected on behalf of that party and to further the interests of Mr. LaFollette's candidacy for president of the United States and Mr. Burton K. Wheeler, as candidate for vice-president, and that, on the day named, a certified copy of the proceedings of the convention was duly filed with the secretary of state; that, on the 30th of August, 1924, certain citizens of the state issued a call for a state convention to be held on September 9, 1924, for the purpose of forming a political party to be known as "The LaFollette State Party," to nominate a full state ticket, and that on September 9, pursuant to such call, certain persons met and organized the LaFollette State Party, adopted resolutions promising adherence to the candidacies of Mr. LaFollette and Mr. Wheeler, and nominated a ticket for the various state offices to be placed on the ballot for the general election to be held on November 4, 1924, under the title and designation of "The La-

Follette State Party;" that the use of Mr. LaFollette's name in connection with such organization was unauthorized by him and was against his wishes; that the LaFollette State Party is in no wise affiliated with, or recognized by, the national organization known as the Progressive Party, which supports Mr. LaFollette's and Mr. Wheeler's candidacies; that, if the LaFollette State Party's ticket is printed and distributed on election day, the rights of the relators will be greatly prejudiced and they will suffer great and irreparable damage, in that such ticket will appear under the name of Mr. LaFollette, and voters desiring to vote for him for president of the United States will be misled into the belief that, in voting for the candidates of the LaFollette State Party, they will be voting for electoral candidates pledged to support Mr. LaFollette for president of the United States, when, as a matter of fact, such will not be the case; that the rights and interests of the relators and the public importance thereof make it imperative that the matter should be speedily determined, and that there is no speedy or adequate remedy at law.

The answer of the respondent admits that "The LaFollette State Party" was organized and that a state ticket was nominated by it and has been duly certified to him as secretary of state, and that unless prohibited he will certify the names of such candidates to the various election boards in the state as required by law; that the proceedings of the LaFollette State Party convention were duly and regularly certified and presented to him for filing. While the State Party was not made a formal respondent in the case, it has appeared.

While the case was presented to us only two or three days ago, we feel, because of the emergency, that we

should proceed at once to a decision of the matters involved.

Section 5173, Rem. Comp. Stat. [P. C. § 2164], provides that, not less than 20 nor more than 30 days before an election, the secretary of state shall certify to the clerk of the board of county commissioners of each county the name and place of residence of each person nominated by any party convention.

Section 5203, Rem. Comp. Stat. [P. C. § 2247], provides that any political party which at the last preceding election cast less than 10% of the votes may nominate candidates in the manner provided by existing laws for conventions.

Section 5172, Rem. Comp. Stat. [P. C. § 2163], provides that certificates of nomination shall be filed with the secretary of state not more than 60 nor less than 30 days before the date fixed for election.

Section 5167, Rem. Comp. Stat. [P. C. § 2158], provides that

"Any convention    .    .    .    as hereinafter defined, held for the purpose of making nominations for public office, and also electors to the number hereinafter specified, may nominate candidates for public office, to be filled by election within the state. A convention    .    .    .    within the meaning of this chapter, is an organized assemblage of electors or delegates, representing a political party or principle, ·    .
.    ."

At the outset we are met with the vigorous contention of the respondent to the effect that this court should not exercise its original jurisdiction by issuing or refusing to issue the writ asked for, and that it has no power so to do, or to consider the merits of the matter. Whether we will issue a writ of mandate is not a question of jurisdiction but one of discretion, because art. 4, § 4, of the state constitution authorizes

this court to exercise its original jurisdiction in the issuance of such writs. We should and always will be slow to exercise our original jurisdiction in this regard, for the reason, among others, that we have not been provided with the machinery necessary for the taking of testimony or the settling of disputed facts, and also because applications for such writs are always hurriedly made and counsel have not the opportunity to fully and deliberately present the matter to us, nor have we, because of the emergency, proper time to give to the matters involved. But proceedings for a writ of mandate, while unusual and extraordinary, are but another form of civil action. Its ancient use was, and present purpose is, to permit the courts to do justice in that manner between parties litigant, because to relegate them to the usual civil procedure would be to deny them, in many cases, any benefit of the courts. We will not, however, under any circumstances, exercise our prerogative to grant a writ of mandate except where it appears to us that the ordinary course of procedure will not be capable of giving justice. In other words, we will not issue the writ if there is a plain, speedy and adequate remedy by following the ordinary course of civil procedure.

In *State ex rel. Brown v. McQuade*, 36 Wash. 579, 79 Pac. 207, we said:

"In our practice, mandamus is nothing more than one of the forms of procedure provided for the enforcement of rights and the redress of wrongs. The procedure has in it the elements of a civil action. The facts stated in the affidavit for the writ may be controverted by a return, raising both questions of law and fact.    .    .    .    In other words, the right to sue out the writ is not made to depend on the character of the dispute, but on what answer is given to the question, can the ordinary course of law afford a plain,

speedy and adequate remedy. If the ordinary course of law will furnish such a remedy, the writ will not issue; otherwise, it will."

To the same effect see *State ex rel. Gillette v. Clausen,* 44 Wash. 437, 87 Pac. 498.

In *State ex rel. Bellingham v. Abrahamson,* 98 Wash. 370, 168 Pac. 3, it was announced:

"The adequacy of the remedy by appeal or in the course of law is the test in all cases as to whether mandamus will lie, irrespective of the question of jurisdiction or lack of jurisdiction."

To the same effect see *State ex rel. Townsend Gas & Electric Light Co. v. Superior Court,* 20 Wash. 502, 55 Pac. 933; *State ex rel. Washington Dredging & Imp. Co. v. Moore,* 21 Wash. 629, 59 Pac. 505; *State ex rel. Barbo v. Hadley,* 20 Wash. 520, 56 Pac. 29; *State ex rel. Godfrey v. Turner,* 113 Wash. 214, 193 Pac. 715.

Let us, therefore, see whether the facts of this case should convince us that there is no adequate remedy in the ordinary course of procedure.

The general election is to be held in about 30 days from now. A certificate of the transactions of the convention had to be filed with the secretary of state not less than 30 days before the date of election, and that officer, after receiving such certificates, must, not less than 20 days before election, certify the nominations to the election boards. It will thus be observed that, if any relief is to be had by the parties to this proceeding, it must be had quickly. For us to relegate them to the ordinary course of civil procedure would be to deny them any relief. But the *Attorney General* argues that this petition is, in effect, an application for a writ of prohibition, and contends that such a writ will issue only for the purpose of restraining the exercise of an unauthorized judicial or quasi-judicial

act, and cites *State ex rel. Harris v. Hinkle,* 130 Wash. 419, 227 Pac. 861, in support of his contention. It is true that, following prior decisions, we there said that the writ of prohibition will issue only "against acts of judicial or quasi-judicial character.    .    .

." But we are here dealing with an application for a writ of mandate and not one of prohibition, and mandate may prohibit the doing of a thing as well as command it to be done. We have never held that the sole purpose of the writ of mandate concerned acts which were judicial or quasi-judicial in their nature; on the contrary, we have habitually issued it to control almost all kinds of actions. For the reasons given, we think it our duty to consider this case upon its merits.

The certificate of the proceedings of the convention of "The LaFollette State Party" is regular on its face and indicates that the party was regularly formed and its convention was in accordance with the statutes.

But the petition for the writ alleges that the motives which induced the organization of the LaFollette State Party and the nomination of its state ticket were bad, and that, if the candidates so nominated appear on the printed ballot under the party name, great injury will be done relators in that the voters will be misled. These things are denied by the answer. But, if they be taken to be true, there is no remedy except through the legislature. It is a political, not a judicial question. The statutes of this state seem to authorize the formation of new parties and the nomination of candidates by them. While they are exceedingly uncertain and meagre on this question, and make our task a difficult one, it is plain that, when new parties are organized and have acted in conventions, we have no power to inquire into the motives which actuated

them, or to decide that their actions were unwise. If these new parties have it in their power, as alleged in the petition, to do acts detrimental to the aspirations of candidates of other parties, the remedy is with either the legislature or the intelligent voter and not the courts. We might say, maybe somewhat beside the question, that, since the LaFollette State Party has not nominated electoral candidates, it is difficult for us to see how its actions will be detrimental to the interests of Mr. LaFollette. However that may be, the courts should be very slow to deprive a citizen of the right to vote for whomsoever he pleases.

There is another question involved. Mr. LaFollette appears personally and objects to his name being connected with the State Party. During the argument a telegram was read and filed, and admitted to be genuine, to the effect that the use of his name in that connection was unauthorized and against his wishes. Nothing so exclusively belongs to a man or is so personal and valuable to him as his name. His reputation and the character he has built up are inseparably connected with it. Others can have no right to use it without his express consent, and he has a right to go into any court at any time to enjoin or prohibit any unauthorized use of it. Nor is it necessary that it be alleged or proved that such unauthorized use will damage him. This the law will presume. But it was said in the argument that consent to the use of his name in connection with the State Party had been obtained before that party held its convention. If at one time Mr. LaFollette gave consent to the use of his name in this connection, it was nothing more than a bare license or permission which may be revoked by him at any time; and in this case, if the permission were given, he has chosen to exercise his lawful right

to revoke it. No authorities are cited by either of the parties concerning the unauthorized use of a man's name, and within the short time at our disposal our briefing has failed to disclose any such case. But we have no hesitancy, even without the backing of authority, in holding that those organizing and creating the LaFollette State Party had no right to use Mr. LaFollette's name in that connection against his wishes.

The foregoing seems to dispose of the questions before us.

It is ordered that the name "La Follette" be stricken from the name of the political party in question and from the certificate it has filed with the secretary of state and that the name "The State Party" remain, and that the respondent be prohibited from certifying to the election boards or other officers the names of candidates for office under the party designation of "The LaFollette State Party," but is not prohibited from making his certificate of such candidates under the party name "The State Party."

MAIN, C. J., TOLMAN, PARKER, and FULLERTON, JJ., concur.