STATE OF MONTANA EX REL. A. G. LEE, RELATOR AND RESPONDENT, *v.* MONTANA LIVESTOCK SANITARY BOARD, AND JAMES J. HURRY, RESPONDENTS AND APPELLANTS.

No. 9958.
Submitted January 12, 1959. Decided May 6, 1959.
Rehearing Denied June 1, 1959.
339 Pac. (2d) 487.

Forrest H. Anderson, Atty. Gen., Robert J. Emmons, Asst. Atty. Gen., Helena, for appellant.

Hugh J. Lemire, Miles City, for respondent.

THE HONORABLE JAMES T. SHEA, District Judge: (sitting in place of MR. CHIEF JUSTICE HARRISON):

This appeal is taken from a judgment granting respondent Lee's application for a writ of prohibition commanding the appellant Board to cease its activities in connection with compelling the respondent to present certain of his cattle for brucellosis testing.

Prior to the institution of this action in the district court the Board had, upon petitions ostensibly complying with sections 46-212 and 46-213, R.C.M. 1947, issued its order number 184, declaring Rosebud County a "disease control area." It thereafter ordered the respondent to present his cattle at a designated time and place for brucellosis testing.

The respondent sued out an alternative writ of prohibition which the Board met with a motion to quash and issue was joined. The motion to quash was denied; evidence was presented by the respondent; the Board stood upon its motion; judgment was entered in favor of the respondent; and a peremptory writ was issued.

By their appeal herein, the Board predicates error on the part of the court below in that (1) the court erred in denying appellant's motion to quash; (2) the court erred in its conclusion of law number 1 when it stated the enumerated acts of the Board were quasi-judicial. Other specifications of error urged were to the effect the law (sections 46-212 and 46-213, supra) was unworkable and that the Board erred in declaring the entire county a disease control area without considering each township separately and that certain other acts of the Board and the county assessor failed to conform to, and violated the provisions of, the statutes aforesaid. Because our answer to the first two specifications of error must be decisive of this

appeal, it will not be necessary to consider the remaining specifications of error or the matters thereby referred to.

Suffice it to say that while the actions of the Board were not done with the care deserved and required, and the law itself is not a model of legal draftsmanship to fit Montana situations, on our review of the extraordinary writ issued here, we shall confine ourselves to the issue presented.

The specification of error No. 1 assigned by the Board has reference to the failure of the court below to grant the motion to quash the writ. The basis of the motion was that prohibition was and is not the proper remedy under the circumstances for the reason that the actions of the Board were ministerial in nature and were within the statutory jurisdiction of the Board.

Prohibition is thus defined by section 93-9201, R.C.M. 1947: "The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person."

The respondent argues that the writ should lie because the establishment of a disease control area is a judicial act requiring decisions as to the danger of the disease and the species of animals subject to the disease. We think, however, that his arguments in this regard do not apply for the issue is not so broad. Actually, the only issue raised in this case is the validity of the order directed to the respondent requiring him to produce his cattle for testing, and the judicial or ministerial nature of the promulgation of that order presents the question to be decided at this stage of our inquiry.

The distinction between ministerial acts and those quasi-judicial in nature was discussed by this court in Bair v. Struck, 29 Mont. 45, 50, 51, 74 Pac. 69, 71, 63 L.R.A. 481, wherein the court said: "The mere fact that such officers are called upon to exercise some discretion or judgment in selecting materials to be used and the manner of their use does not change the character of their acts from ministerial to judicial or quasi-

judicial ones. Experience teaches that few, if any, ministerial officers are not called upon to exercise some judgment or discretion in the performance of their official duties. But, if the contention of the appellant be sustained, the distinction between ministerial and quasi-judicial acts is practically abolished.

"As distinguishing between acts quasi-judicial and acts ministerial in their character, the following definitions we think correctly state the law: 'Quasi-judicial functions are those which lie midway between the judicial and ministerial ones. The lines separating them from such as are thus on their two sides are necessarily indistinct; but, in general terms, when the law, in words or by implication, commits to any officer the duty of looking into facts, and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is termed quasi-judicial.' Mechem on Public Officers, section 637; Bishop on Non-Contract Law, sections 785, 786. * * *

" 'A ministerial act may perhaps be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act done.' [Throop on Public Officers, section 537;] Flournoy v. City of Jeffersonville, 17 Ind. 169, 79 Am. Dec. 468; Pennington v. Streight, 54 Ind. 376.

" '* * * In the same line, a ministerial act has also been defined as an act performed in a prescribed manner, in obedience to the law or the mandate of legal authority, without regard to, or the exercise of the judgment of the individual upon the propriety of the acts being done.' Mechem on Public Officers, section 657."

We see no reason to waiver from the views there expressed and under that case or the case of Hicks v. Dorn, 42 N.Y. 47, as stated in the Bair case, the actions herein involved are clearly ministerial in nature. The statute provides that testing is mandatory under directions of the Livestock Sanitary Board. All that is left to the discretion of the Board is the giving of

directions and that is what the order to produce the cattle for testing amounted to. The statute provides what should be done and under what circumstances it is to be done. Therefore carrying out of this law is a ministerial function.

Thus we must answer the crucial question herein: Has a ▉ district court power to issue a writ of prohibition to restrain actions of a ministerial nature? The appellant disputes the existence of such power arguing that the district court's power to issue such writs derives direction from the Constitution, Art. VIII, section 11; that the power there granted is to issue the writ as known at the time the Constitution was adopted; and that the writ at the time the Constitution was adopted did not lie to restrain ministerial actions.

In State ex rel. Scharnikow v. Hogan, 24 Mont. 379, 62 Pac. 493, 51 L.R.A. 958, it was held so far as the powers of the *supreme court* are concerned, that the writ of prohibition could not issue to restrain a ministerial act and that so far as the statute (now section 93-9201, R.C.M. 1947) purported to authorize such a writ it was invalid. Decision of the question as it applies to district courts, however, was expressly avoided. California, under identical constitutional provisions and statutes, has taken a similar position. Camron v. Kenfield, 57 Cal. 550; Maurer v. Mitchell, 53 Cal. 289.

The problem confronting us now was decided in California in the case of Farmers' Co-operative Union v. Thresher, 62 Cal. 407. Holding that the superior courts had no more power to issue the writ to prohibit ministerial acts than the supreme court, that court said: "We can not see, from reading the Constitution, where any power is given the Legislature to enlarge the jurisdiction of the Superior Courts that has not been given the same body to enlarge the jurisdiction of the Supreme Court. But it is not a question of a jurisdiction of the Courts, but a question of enlarging the office of the writ of prohibition. Section 4, Article VI, of the Constitution gives the Supreme Court jurisdiction to issue writs of prohibition. Section 5 of the same article gives the Superior Court the same jurisdiction. It can

be readily seen, by comparing the two sections, that both Courts have the same jurisdiction in regard to writs of prohibition. And the Legislature, in their amendment to Section 1102 of the Code of Civil Procedure, did not attempt to enlarge the jurisdiction of either of the Courts; but they did attempt to enlarge the province of the writ of prohibition; and that, we submit, under the decisions of our State, can be done. *And the decision in Camron v. Kenfield is as applicable to writs issued from the Superior Courts as it is to writs issued from the Supreme Court."* Emphasis added.

The position taken in the Farmers' Union case has been reiterated in Hobart v. Tillson, 66 Cal. 210, 5 Pac. 83; and in Baines v. Zemansky, 176 Cal. 368, 168 Pac. 565. The same rule is followed in Idaho, Stein v. Morrison, 9 Idaho 426, 75 Pac. 246 (overruling a contrary decision), Nevada, In re Cowles, 52 Nev. 171, 283 Pac. 400, and Washington, State ex rel. White v. Board of State Land Commissioners, 23 Wash. 700, 63 Pac. 532, among others.

We are convinced that the case of Farmers' Union v. Thresher, supra, is sound and that we should follow it. We would come to the same conclusion for much the same reasons even if that case did not exist. There is no reason why, when issued by the district courts rather than by this court, the scope of the writ should be different.

The supreme court and the district courts of this state are all established by the same article of the Constitution. The jurisdiction of each of them is likewise provided by constitutional grant. Both are given the power in otherwise unqualified terms to issue writs of prohibition. We cannot imagine that within the same article of the Constitution two different writs are described by the name "writ of prohibition." Such inconsistency is to say the least not likely.

Here, while we have deemed it unnecessary in making a determination of this appeal to consider any of the specifications of error other than the first two, still we have given a vast amount of our time and study to all, and it may not be

amiss to here state that the writ of prohibition would not restrain a ministerial, executive or administrative function, no matter how illegal the act thereunder may be so long as the tribunal sought to be restrained has jurisdiction of the subject matter in controversy. A mistaken exercise of such tribunal's acknowledged powers will not justify the issuance of the writ. The writ of prohibition will not be issued as of course, nor because it may be the most convenient remedy. Nor will it be allowed to take the place of an appeal, or perform the offices of a writ of review. See State ex rel. White v. Board of State Land Commissioners, supra.

We therefore conclude that since the actions of the Board herein are ministerial in nature, the district court was without authority to issue the writ as it did. This is the case notwithstanding the provisions of section 93-9201, R.C.M. 1947, and so far as that section purports to authorize the writ in such cases it is inconsistent with the Constitution and therefore invalid. The motion to quash should have been granted.

The judgment is reversed, the motion to quash must be granted. It is so ordered.

MR. JUSTICES ADAIR, ANGSTMAN, BOTTOMLY and CASTLES, concur.