NO. 83-315

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

DOUGLAS ALLEN, et al.,

Respondents and Petitioners,

v.

THE MADISON COUNTY COMMISSION, et al.,

Appellants and Respondents,

v.

DANIEL M. SEGOTA, et al.,

Appellants and Intervenors.

---

Appeal from:   District Court of the Fifth Judicial District,
               In and for the County of Madison
               Honorable Arnold Olson, Judge presiding.

Counsel of Record:

    For Appellants:

    Loren Tucker, County Attorney, Virginia City, Montana

    For Intervenors:

    Chester Jones, Virginia City, Montana

    For Respondents:

    Meloy & Llewellyn, Helena, Montana
    Peter  Michael Meloy, Helena, Montana

---

Submitted on briefs:  December 29, 1983

Decided: June 28, 1984

Filed:

_____
                            Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a writ of prohibition issued by the Fifth Judicial District Court, Madison County, prohibiting the Madison County Commission (Commission) and the Madison County Recorder (Recorder) from placing on an election ballot the question of retaining the charter form of county government rejected by county voters in a previous election. We affirm.

The sole issue on appeal is whether the District Court erred in granting the writ of prohibition.

This case is the third of three actions aimed at resolving a longstanding dispute over the form of government in Madison County. A brief history of the dispute and the successive legal actions is necessary to an understanding of the issue.

In 1976 the electors of Madison County adopted a charter form of government. In early 1980, after four years of the charter government, a number of dissatisfied citizens formed an organization known as the "Tobacco Root Rebellion," to place before the electorate the question of returning to a commission form of government. On two separate occasions, a member of this group proposed to the Commission (so called under the charter government) a resolution calling for a vote by the electorate on the question of returning to the commission form of government. The majority of the commissioners rejected the resolution in both cases.

Thereafter, two petition drives were initiated among the Madison County electorate. Both petitions asked the Commission to place before the voters the question of abandoning the charter and returning to the previous commission form of government. On both occasions, the

- 2 -

Commission refused to place the question before the electorate. Instead, in 1980 and again in 1982, the Commission proposed modifications to the existing charter form of government and placed its proposals on the ballot. The first proposal involved modification of the duties of the commissioners. This amendment was adopted. The second proposal involved changing the position of chief executive from an elective office to an appointive office. This change was rejected by the voters.

In August 1982, proponents of the commission form of government again petitioned the Madison County Commission for an election on the question of returning to the previous commission form of government. In September 1982, the Commission rejected this petition and again refused to submit the question to the electorate. The Commission based its refusal upon section 7-3-155, MCA, which provides that the electors of a unit of local government which has voted upon the question of changing or amending the form of local government may not vote on the question again for three years. The Commission apparently took the view that since the commissioners had proposed modifications and held elections on those proposals, no other change could be considered for three years following the election on the Commission's latest proposal.

In response to the the Commission's refusal to place the question on the ballot, certain members of the electorate petitioned the District Court for a writ of mandate directing the Commission to place the matter on the ballot. The court ruled that section 7-3-155, MCA is an impermissible legislative restriction upon the power of initiative reserved to the electorate by the Montana Constitution. The court

concluded that as applied in the factual context of that case, section 7-3-155 had prevented Madison County voters from exercising their reserved power of initiative to change the form of county government for more than eight years after adoption of the Madison County charter. The court issued a writ of mandate ordering the Commission to place the proposal for change of form of government before the electorate at an election to be held on November 2, 1982. No appeal was taken from the judgment.

The proposal contained in the petition was accordingly placed upon the ballot, the election was held, and a majority of the electors voted to abandon the charter form of government and return to the commission form of government. The Commission, as required by law, then adopted a schedule for executing the transition from charter to commission form. This transition schedule called for election of officers for the new commission government to be held on April 28, 1983. The new officers were to take office on June 28, 1983, when the new form of government would come into existence. Meanwhile, pursuant to the transition schedule and the applicable statutes, the charter form of government remained in existence and the Commission and its individual members continued as the county's governing body under the existing charter government.

In late December 1982, Russell K. Hudson, one of the intervenors in this action, and others brought a second action, to set aside the November 2, 1982 election and to enjoin the holding of election of officers for the new commission government. The District Court found there were no statutory violations in the holding of the election and that the petition substantially complied with the

requirements of law. None of the parties sought post-judgment relief.

In late February 1983, certain pro-charter electors of Madison County certified and circulated a petition essentially proposing a re-vote on the form-of-government question. This petition called for an election "for the purpose of altering the existing form of government from the existing Commission form of government to the Charter form of government in form as under the Charter of Madison County 1976 as amended." The petition provided that should a majority of electors vote in favor of the proposal, the charter government would take effect on June 27, 1983 and the present charter officers, including the Commission and its individual members, would continue in office until the end of their terms held under the 1976 charter.

These electors, essentially the same individuals who had unsuccessfully challenged the previous election, submitted their petition to the Commission pursuant to section 7-3-125, MCA, which authorizes submission of a petition proposing "the alteration of an existing form of local government." After examining the petition for sufficiency and number of signatures and consulting with counsel, the Commission directed the question to be placed on the ballot at a special election to be held April 28, 1983.

Petitioners then brought this, the third action, petitioning the District Court for a writ of prohibition enjoining the holding of another election on the question of returning to the charter form of government. Petitioners alleged that the Commission had no authority to order an election, except as authorized by the provisions of Title 7, Chapter 3, MCA. They argued that because the commission form

of government was not yet an "existing form" of government, the statute did not authorize the proposed election and the Commission had no jurisdiction to order an election. The individuals who sought the new election intervened in the action and participated in its resolution.

After hearing, the District Court issued a writ of prohibition enjoining the proposed election. The writ expressly stated it would remain in effect "until June 27, 1983, at which time the modified commission form of government shall be in existence." In its findings and conclusions dated April 26, 1983, the court concluded:

> "The actions of the Respondent Commission in placing the question before the electors is an act which is in excess of its jurisdiction, and Petitioners have no plain, speedy, or other adequate remedy by which to pursue this unlawful act of the Respondents."

The court also awarded to petitioners their expenses including attorneys' fees and costs. The Commission, the Recorder and individual intervenors appeal from the writ of prohibition and award of attorneys' fees granted by the District Court.

A writ of prohibition is a proper remedy to arrest the proceedings of any tribunal, corporation, board or person when the proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person. Section 27-27-101, MCA; State ex rel. Shea v. Judicial Standards Commission (Mont. 1982), 643 P.2d 210, 216, 39 St.Rep. 521, 528. The writ may issue in all cases in which there is not a plain, speedy and adequate remedy in the ordinary course of law. Section 27-27-102, MCA; Shea, 643 P.2d at 216, 39 St.Rep. at 528.

Appellants argue that the District Court erred in concluding that placing the change-of-government. question on the ballot was beyond the jurisdiction of the Commission. They argue the Commission was mandated by the language of sections 7-3-125 and -149, MCA and by the court's judgment in the mandamus action to place the question on the ballot because it had received a petition proposing alteration of the "existing" commission form of county government. We disagree.

Section 7-3-123, MCA provides:

"An alteration of an _existing_ _form_ of local government may be proposed by a petition of the electors." (emphasis added)

Section 7-3-125, MCA further provides in part:

"(1) A petition for the alteration of an _existing_ _form_ of local government may be presented to the governing body of the local government. The petition must meet the requirements of 7-3-142 through 7-3-145.

"(2) The petition must be signed by a least 15% of the electors of the local government registered at the last general election, and upon receipt of the petition the governing body shall call an election, as provided for in 7-3-149 through 7-3-151, on the proposed alteration . . .." (emphasis added)

See also section 7-3-149(1), MCA.

The new commission government was not to take effect until June 28, 1983, after election of new county officers. See section 7-3-156, MCA. During the transition period, the existing charter government remained in power with statutory authority to continue to govern, so long as consistent with the plan of transition to the new form of government. Section 7-3-157 through 7-3-159, MCA. When a second election was proposed in February 1983 to change from the commission to the charter form of government, the commission form of government was not yet an "existing form" of local government

and neither the petition nor the proposed election was authorized.

Appellants contend it is illogical and inconsistent that county officers were previously mandated to call an election because it was deemed a "clear legal duty," and yet were prohibited in this case from calling an election because to do so was beyond their jurisdiction. However, this argument ignores the clear distinction between the two cases. In the mandamus action, the petition proposed alteration of the existing charter form of government, and insofar as other statutory prerequisites were satisfied, the election was required. In this case, the petition proposed alteration of a form of government not yet in existence. The conclusions in the previous case and this case were based upon different facts and were not inconsistent. Further, none of appellants additional arguments suggesting the Commission had authority to call the disputed election merit discussion.

We hold that the District Court properly concluded that placing on the ballot the question of changing from the commission form of government to the charter form of government was in excess of the Commission's jurisdiction.

Appellants contend that even if the Commission's act is in excess of its jurisdiction, the writ of prohibition will not lie if the act is ministerial in nature, citing State ex rel. Lee v. Montana Livestock Sanitary Board (1959), 135 Mont. 202, 208-09, 339 P.2d 487, 490-91. Thus, they argue that the District Court erred in failing to address whether this act was ministerial or quasi-judicial in nature. They contend that calling an election is a ministerial act which cannot be restrained by a writ of prohibition.

- 8 -

However, we need not decide whether a writ of prohibition will lie to restrain a ministerial act in excess of the Commission's jurisdiction, because we conclude that the act involved here is not ministerial. The calling of an election by the Commission under these facts is an act involving discretionary determinations and is therefore a quasi-judicial rather than ministerial act. State Bar of Montana v. Krivec (Mont. 1981), 632 P.2d 707, 711, 38 St.Rep. 1322, 1326; State ex rel. Lee v. State Livestock Sanitary Board (1960), 138 Mont. 536, 357 P.2d 685. In addition to determining whether the petition requesting an election met the technical requirements as to number and validity of signatures, the Commission was required to determine whether the petition proposed alteration of an "existing form" of local government and whether the express statutory limitations on elections applied. As clearly demonstrated by the history of this case, these determinations involved the exercise of discretion based upon the existing facts. Because the calling of an election here is a quasi-judicial function, we need not address the parties' arguments regarding whether prohibition lies to restrain a ministerial act.

Appellants further contend that prohibition will not lie because other plain, speedy and adequate remedies are available to petitioners. They argue that injunction, declaratory judgment and judicial review are each plain, speedy and adequate remedies available to petitioners in this case. We conclude that the District Court properly exercised its discretion in concluding that petitioners had no plain, speedy and adequate remedy in the ordinary course of law.

Section 27-27-102, MCA authorizes issuance of the writ of prohibition "in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law." A remedy is speedy when, having in mind the subject matter involved, it can be pursued with expedition and without essential detriment to the party aggrieved; and it is neither speedy nor adequate if its slowness is likely to produce immediate injury or mischief. Bradbook v. City of Billings (1977), 174 Mont. 27, 30, 568 P.2d 527, 529; State ex rel. Taylor v. District Court (1957), 131 Mont. 397, 402, 310 P.2d 779, 781.

The judicial review procedure set forth in section 7-3-154, MCA does not meet the standard set forth in Bradbook and Taylor. This procedure provides for challenge to the validity of procedures whereby an alternative plan of local government has been adopted, but the statute does not appear to provide for challenging the holding of the election. To invoke this remedy, petitioners would be required to await the outcome of the election and then challenge the election in the face of a presumption of procedural validity. The expense of placing the question on the ballot would be wasted if the election were later deemed to have been unauthorized. This remedy could not be pursued without essential detriment to petitioners. Further, its slowness would result in the immediate injury of unnecessary public expense and further uncertainty as to the status of the new commission government. This is clearly an inadequate remedy.

Appellants next contend that petitioners have a plain, speedy and adequate remedy in the injunction procedures set forth in section 27-19-101, et seq., MCA. Even if injunction would lie in this case, which we do not decide, it would not

preclude a writ of prohibition. State ex rel. Department of Health v. Lincoln County (1978), 178 Mont. 410, 584 P.2d 1293. In Department of Health, we found that there was no plain, speedy and adequate remedy in the ordinary course of law and that prohibition was a proper remedy, even though we also found that injunction was available as an alternative remedy. 178 Mont. at 416-17, 584 P.2d at 1296-97.

Appellants finally contend that declaratory judgment under section 27-8-101, et seq., MCA, is a plain, speedy and adequate remedy available to petitioners. However, declaratory judgment is inadequate because it merely declares rights or duties, but does not compel nor restrain performance. State ex rel. Konen v. City of Butte (1964), 144 Mont. 95, 102, 394 P.2d 753, 757. Declaratory judgment would not prohibit the holding of an election, but would merely determine whether the election was properly called. Declaratory judgment is therefore an inadequate remedy in this case.

We hold that the District Court properly concluded that petitioners had no plain, speedy and adequate remedy in the ordinary course of law and the court properly issued the writ of prohibition.

Appellants suggest that the writ of prohibition should be vacated because it is inappropriate to grant petitioners attorney fees against the county government. However, attorney fees are allowable as an item of damages in prohibition cases if pleaded. Sections 27-27-104 and 27-26-402(1), MCA; Kadillak v. The Anaconda Company (1979), 184 Mont. 127, 144, 602 P.2d 147, 157; State ex rel. Taylor v. District Court (1957), 131 Mont. 397, 403, 310 P.2d 779, 782. Further, an award of attorney fees is allowable in a

prohibition action against a local governmental body, so long as government officers appear and defend the proceeding in good faith. Section 27-26-403, MCA; State ex rel. Morales v. City Commission (1977), 174 Mont. 237, 342, 570 P.2d 887, 890; State ex rel. Willumsen v. City of Butte (1959), 135 Mont. 350, 355-56, 340 P.2d 535, 538. The District Court did not err in awarding attorney fees to petitioners to be set by the District Court in a reasonable amount.

The judgment is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices