No. 85-624

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

MALTA IRRIGATION DISTRICT, GLASGOW
IRRIGATION DISTRICT, DODSON IRRIGATION
DISTRICT, ZURICH IRRIGATION DISTRICT,
HARLEM IRRIGATION DISTRICT, FORT BELKNAP
IRRIGATION DISTRICT, PARADISE VALLEY
IRRICATION DISTRICT, ALFALFA VALLEY
IRRIGATION DISTRICT,

        Petitioners and Appellants,

-vs-

MONTANA BOARD OF HEALTH AND ENVIRON-
MENTAL SCIENCES, an agency of the
STATE OF MONTANA, and its individual
members,
        Respondent,
   and

MONTANA RENEWABLE RESOURCES, INC.,
Real Party in Interest.

---

APPEAL FROM:  District Court of the First Judicial District,
              In and for the County of Lewis & Clark,
              The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        F. Woodside Wright, Helena, Montana
        Matthew W. Knierim, Glasgow,Montana
        Douglas E. Davidson argued; Bishop, Liberman & Cook,
        New York, New York

    For Respondent:

        Allen P. Chronister argued, Agency Legal Services,
        Helena, Montana
        G. Steven Brown argued, Helena, Montana
    For Amicus Curiae:

        Roger Tippy, City of Gillette, WY, Helena, Montana

---

                Submitted:  October 21, 1986

                Decided:  December 18, 1986

Filed:  **DEC 18 1986**

_Ethel M. Harrison_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a denial of an application for a writ of prohibition entered by the First Judicial District in and for Lewis and Clark County. Petitioners sought to restrain the Board of Health and Environmental Sciences from reviewing an action taken by the Department of Health and Environmental Sciences. The District Court found that the Board was acting within its jurisdiction and so refused to issue the writ. We affirm.

This dispute involves three entities competing for the mutually exclusive right to construct a hydroelectric generation facility at the federally owned and operated Tiber Dam in Liberty County, Montana. The three competitors are the Milk River Irrigation Districts (Districts), a consortium of eight irrigation districts; Montana Renewable Resources (MRR), a Montana limited partnership; and the City of Gillette, Wyoming (Gillette). The Districts, MRR and Gillette have all applied and are in competition for a license from the Federal Energy Regulatory Commission (FERC) to construct and operate the proposed facility. A FERC license will be issued to only one of the three applicants.

Section 401 of the Federal Water Pollution Control Act amendments of 1972, 33 U.S.C. § 1341(a), requires that before a federal agency may grant a permit or license authorizing development of a facility, an applicant must provide certification from the appropriate state agency that discharges from the applicant's proposed project will comply

with the state's applicable water quality standards.[1] The federal licensing or permitting agency may not consider an application unless a 401 certification has been obtained.

It is this process of state "401 certification" that is at issue. While other aspects of regulation of such hydroelectric facilities have been preempted by Congress, certification of water quality compliance largely rests with the states. Montana, however, has failed to adopt any formal rules to cover this certification process. 401 certifications are not mentioned anywhere in our statutes or regulations and considerable disagreement exists over the appropriate procedures to be used.

In the past, the state agency which has handled these certification applications has been the Department of Health and Environmental Sciences (Department). The three applicants accordingly each applied to the Department for 401 certification, and on May 14, 1984, the Department issued certification to all three.

MRR, however, soon began to question whether its competitors' projects actually complied with the state water quality standards. MRR designed its project to utilize Tiber Dam's existing low level or river outlet, through which is released downstream the deeper, cooler water of the reservoir. The Districts and Gillette, on the other hand, proposed to use the dam's auxiliary or upper outlet. MRR contended that its rivals, by using this auxiliary outlet, would discharge water with significantly higher temperatures.

---

1    If no state agency issues such certifications, then the Administrator of the Environmental Protection Agency may issue it.

Water temperature is significant because of the existence, immediately below the dam, of a thriving trout fishery which requires relatively cooler water. The state, in an effort to protect this fishery, enacted temperature restrictions on any water to be released into the fishery. MRR argued that the projects of its competitors would violate applicable state water quality standards by releasing downstream water in excess of these temperature limits and that their 401 certifications were therefore improperly granted.

Consequently, on October 2, 1984, MRR requested that the Department reconsider its 401 certification of the projects submitted by the Districts and Gillette. The Department reviewed MRR's request for reconsideration, but on November 27 refused to modify its decision. So in early 1985, MRR turned to the Board of Health and Environmental Sciences (Board). On February 6, 1985, MRR formally petitioned the Board for an appeal of the Department's certification of the Districts and Gillette, or alternatively, a declaratory ruling. In July, 1985, the Board voted to schedule the matter for an evidentiary hearing.

The Districts and Gillette responded on August 15, 1985, by filing applications in District Court for writs of prohibition directing the Board to refrain from any further proceedings with respect to their 401 certifications. The District Court initially granted a temporary writ to both the Districts and Gillette, but on September 19, 1985, quashed the writs and dismissed the applications. It found that the Board was acting within its jurisdiction and therefore concluded that a writ of prohibition was unavailable.

The Districts now appeal, seeking review of the District Court's denial of its petition for writ of prohibition.[2] Meanwhile, the Board's consideration on the merits has proceeded concurrently.

A writ of prohibition shall be granted only to halt proceedings undertaken in the absence of jurisdiction, § 27-27-101, MCA, where there is no "plain, speedy, and adequate remedy in the ordinary course of law." Section 27-27-102, MCA. These principles frame the issues involved herein.

As to water quality matters, the duties and responsibilities of these two administrative entities are recited under the Montana Water Quality chapter, § 75-5-101 et seq., MCA. A complete reading of this statutory chapter illustrates that the legislature intended the Board to have ultimate jurisdiction over general water quality compliance. It is the Board which is charged with adopting rules for the administration of the water quality statutes, § 75-5-201, MCA. It is further charged with classifying all the waters for the state and formulating water purity standards, § 75-5-301, MCA, and is required to hold hearings therewith, § 75-5-307, MCA. It must act as a shield against degradation of water standards, §§ 75-5-302, -303, MCA. It must set standards for wastewater treatment, for effluents and for new point discharges, § 75-5-304, MCA. It is required to set rules governing the application for, and issuance, continuance, modification, denial or revocation of permits, § 75-5-401, MCA, though it may, or perhaps must, delegate the

---

2    The City of Gillette does not appeal, but joins this appeal as an amicus.

5

hearing function on permits to the Department, § 75-5-202, MCA. If, acting under the Board's rules, the Department denies, modifies, suspends or revokes a permit, there is an appeal to the Board, upon which a hearing may be held, §§ 75-4-403, -404, MCA. When the Department charges violation of water quality standards, the matter may be heard and determined by the Board, § 75-5-611 and § 75-5-621, MCA. Finally, it is the Board which is granted the generic authorization to hold hearings necessary for the proper administration of this chapter, § 75-5-202, MCA.

Additionally, § 50-1-301(2), MCA, authorizes the Board to "hold hearings, administer oaths, subpoena witnesses, and take testimony in matters relating to the duties of the board."

Finally, it is the Board and not the Department which the legislature designated as "quasi-judicial" under Montana's Executive Reorganization Act, § 2-15-2104(3), MCA. As such it is empowered to undertake any "quasi-judicial function," defined in § 2-15-102(9), MCA, as:

> [A]n adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies. The term includes but is not limited to the functions of interpreting, applying, and enforcing existing rules and laws; granting or denying privileges, rights, or benefits; issuing, suspending, or revoking licenses, permits, and certificates; determining rights and interests of adverse parties; evaluating and passing on facts; awarding compensation; fixing prices; ordering action or abatement of action; adopting procedural rules; holding hearings; and any other act necessary to the performance of a quasi-judicial function.

In short, we find that the Board is authorized by law to exercise jurisdiction in this matter by holding its own

hearings on 401 certifications. This holding is entirely consistent with the legislature's stated public policy of advancing effective and responsive agency action. Section 2-15-101, MCA.

Even were we to decide this jurisdictional question otherwise, we would nevertheless affirm the District Court's denial of this petition, for the Districts enjoy an effective remedy at law. This Court has previously expressed its strong disinclination to favor writs of prohibition.

> The writ of prohibition is not favored by the courts. Necessity alone justifies it. Although authorized by statute, it is not issued as a matter of right, but only in the exercise of sound judicial discretion <u>when</u> <u>there</u> <u>is</u> <u>no</u> <u>other</u> <u>remedy</u> . . .
>
> . . .
>
> It is justified only by extreme necessity, when the grievance cannot be redressed by ordinary proceedings at law or by appeal . . . (Emphasis in original.)

Morse v. Justice Court (Mont. 1981), 626 P.2d 836, 837, 38 St.Rep. 542, 544.

The Districts argue that despite this disinclination, a writ of prohibition is proper under these circumstances because they lack a speedy and adequate remedy at law. MRR argues that the Districts will have the remedy of judicial appeal from any adverse decision rendered by the Board.

The right of judicial appeal can be a plain, speedy and adequate remedy which precludes prohibition. Joslyn v. City Court (1982), 198 Mont. 223, 645 P.2d 428. Notwithstanding the availability of this right, however, a writ of prohibition may nevertheless issue when the appeal is neither speedy nor adequate. Allen v. Madison County Commission (Mont. 1984), 684 P.2d 1095, 41 St.Rep. 1226. We have long

7

held that a remedy is speedy when, having in mind the subject matter involved, it can be pursued with expedition and without essential detriment to the party aggrieved. A remedy is neither speedy nor adequate if its slowness is likely to produce immediate injury or mischief. Allen, 684 P.2d at 1100; Bradbrook v. City of Billings (1977), 174 Mont. 27, 30, 568 P.2d 527, 529; State ex rel. Taylor v. District Court (1957), 131 Mont. 397, 402, 310 P.2d 779, 781.

For instance, in Allen, supra, we upheld the issuance of a writ of prohibition which barred a county commission from placing an unauthorized issue on an election ballot. Petitioners in that case enjoyed a right of appeal, but were required to await the outcome of the election and would have then been required to challenge the election in the face of a presumption of procedural validity. We found this remedy inadequate because it could not have been pursued without essential detriment to the petitioners. Allen, 684 P.2d at 1100.

Analogous situations are lacking in the instant case. The Districts, following denial of their application for the writ by the District Court, filed a cross-appeal with the Board challenging MRR's 401 certification. The Board held a contested case hearing in which the Districts, Gillette, and MRR all participated. The Board reached a decision largely adverse to the Districts and Gillette on June 4, 1986 and scheduled the issuance of a final order for July 11, 1986. Upon issuance of the final order, the judicial review provisions of § 2-4-701 et seq., MCA, become applicable.

Moreover, we do not find that this right of appeal is inadequate. The Districts have not presented any reasons why judicial appeal would cause essential detriment. For

8

instance, we find no evidence--and the Districts have presented none--which suggests that the Districts would suffer substantive harm in the underlying federal proceeding to determine who is awarded the FERC license. Inconvenience alone does not suffice to invoke the extraordinary remedy of prohibition.

> The writ of prohibition will not be issued as of course, nor because it may be the most convenient remedy. Nor will it be allowed to take the place of an appeal . . .

Lee v. Montana Livestock Sanitary Board (1959), 135 Mont. 202, 209, 339 P.2d 487, 491.

The Districts have suggested, however, that the Board erred in conducting a contested case hearing in this matter. They find no statutory authorization necessarily entitling MRR or any other party to a contested case proceeding before the Board.

Whether the Board has authority to conduct a contested case hearing must, of course, in the first instance be decided by the Board. If, in this controversy, the Districts disagree with the Board's determination, they should dispute this issue through the standard judicial appellate process. The Districts are asking this Court to address an issue about which precious little has been spoken. We see little in the record indicating that this question has been discussed and addressed below. We are not prepared to decide this issue on such an abbreviated record; rather, we require that this question be filtered through the appellate process.

In short, the Districts are unpersuasive in their contention that they lack an adequate and speedy remedy at law. They enjoy the right of appeal from any adverse

decision reached subsequent to the contested case hearing and have not shown that this right is not adequate or speedy.

We affirm the District Court's denial of this application for writ of prohibition.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

10