No. 01-768

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 148

THE STATE OF MONTANA, ex rel.,
MICHAEL S. SMARTT,

   Petitioner and Appellant,

 v.

JUDICIAL STANDARDS COMMISSION AND
ITS MEMBERS, HONORABLE JOHN WARNER,
Chairman; VICTOR F. VALGENTI; BARBARA
EVANS; PATTY JO HENTHORN; AND
HONORABLE ED McLEAN; and STAFF,

   Respondents and Respondents.

APPEAL FROM: District Court of the First Judicial District,
       In and For the County of Lewis and Clark,
       Honorable Jeffrey M. Sherlock, Judge Presiding

COUNSEL OF RECORD:

   For Appellant:

      Channing J. Hartelius, Hartelius, Ferguson, Baker & Kazda, and
      Michael S. Smartt, Great Falls, Montana

   For Respondent:

      Stanley T. Kaleczyc, Browning, Kaleczyc, Berry & Hoven, Helena,
      Montana

           Submitted on Briefs: May 2, 2002

              Decided: July 2, 2002

Filed:

             Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Michael S. Smartt (Smartt) appeals the Order of the First Judicial District Court modifying a writ of prohibition to allow the Judicial Standards Commission to cure ministerial defects before commencing formal proceedings regarding alleged violations of the Canons of Judicial Ethics. We affirm.

¶2 We consolidate the issues raised by Smartt on appeal as follows:

¶3 1. Did the District Court err by modifying and then dismissing its writ of prohibition?

¶4 2. Did the District Court err by granting summary judgment in favor of the Judicial Standards Commission?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 The Judicial Standards Commission (the Commission) received a written but unverified complaint against Justice of the Peace Smartt on October 23, 2000. The complaint alleging judicial misconduct was submitted by Samuel L. Harris (Harris), another Cascade County Justice Court judge. The Commission sent a copy of the complaint to Smartt the next day and received Smartt's response in mid-November 2000. The Honorable John Warner (Warner), chairman of the Commission, was directed to pursue an informal resolution of the Harris complaint, pursuant to Judicial Standards Commission Rule 10. Warner learned that Smartt was also the subject of a Montana Department of Justice investigation. On November 29, 2000, Warner obtained an order from the First Judicial District Court directing the Department's Criminal Investigation Bureau (CIB) to

2

release its report on Smartt to the Commission. The CIB investigation had been conducted at the request of the Cascade County Sheriff and recounted statements made by Troy Nelson Dye (Dye) before a Richland County Justice of the Peace, alleging that Smartt had broken into Dye's home in Sidney, Montana, and sexually assaulted him. At the completion of the CIB investigation, the Richland County Attorney declined to prosecute, and Dye did not file a complaint against Smartt with the Commission. After Warner shared the findings of the CIB report with the Commissioners, the Commission decided to expand its investigation of Smartt's judicial misconduct to include the Dye allegations.

¶6 On December 30, 2000, Warner met with Smartt and his attorneys to discuss informal disposition and informed Smartt that he could avoid further Commission proceedings by voluntarily resigning from his position as Justice of the Peace. After the meeting, Warner sent Smartt transcripts of interviews with Dye from the CIB file and Smartt submitted a response to Dye's allegations. The Commission then hired attorney Gregory Gould (Gould) to file a formal complaint against Smartt with the Montana Supreme Court. Smartt then notified Gould and the Cascade County Commissioners that he intended to resign from his position as Justice of the Peace effective July 1, 2001. On June 28, 2001, Smartt withdrew his resignation. On July 3, 2001, Gould filed the Commission's formal complaint with the Clerk of the Supreme Court.

¶7 Smartt petitioned the First Judicial District Court for a writ of prohibition, which was issued on July 20, 2001. The writ

3

barred the Commission from further proceedings against Smartt based on an unverified complaint until further order of the court.

¶8  The Commission moved to vacate the writ of prohibition and for summary judgment on various procedural and constitutional issues raised in the affidavit accompanying Smartt's petition.  Following oral argument, the court entered an Order on August 15, 2001, that modified the writ, awarded attorney fees to Smartt and reserved ruling on the motion for summary judgment.  The Order allowed the Commission to proceed on the basis of verified complaints alleging matters within the jurisdiction of the Commission.  On October 25, 2001, the court granted the Commission's motion for summary judgment and dismissed Smartt's petition.

**STANDARD OF REVIEW**

¶9  Our standard of review in appeals from summary judgment rulings is *de novo*.  *Andrews v. Plum Creek Mfg., LP*., 2001 MT 94, ¶ 5, 305 Mont. 194, ¶ 5, 27 P.3d 426, ¶ 5. When we review a district court's grant of summary judgment, we apply the same evaluation, based on Rule 56, M.R.Civ.P., as the district court. *Andrews*, ¶ 5 (*citing Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903).  In *Bruner,* we set forth our inquiry:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law.

*Bruner*,  272 Mont. at 264-65, 900 P.2d at 903.

4

¶10 When we review a district court's conclusions of law, the standard of review is plenary and we must determine whether the district court's conclusions of law are correct as a matter of law. *State v. Anderson*, 2001 MT 188, ¶ 19, 306 Mont. 246, ¶ 19, 32 P.3d 750, ¶ 19.

## DISCUSSION

¶11 The Judicial Standards Commission is constitutionally mandated to investigate complaints, subpoena witnesses and documents, and make recommendations to the Montana Supreme Court concerning the discipline of members of the judiciary. Article VII, Section 11 of the Montana Constitution reads:

> (1) The legislature shall create a judicial standards commission consisting of five persons and provide for the appointment thereto of two district judges, one attorney, and two citizens who are neither judges nor attorneys.
>
> (2) The commission shall investigate complaints, and make rules implementing this section. It may subpoena witnesses and documents.
>
> (3) Upon recommendation of the commission, the supreme court may:
>
>> (a) Retire any justice or judge for disability that seriously interferes with the performance of his duties and is or may become permanent; or
>> (b) Censure, suspend, or remove any justice or judge for willful misconduct in office, willful and persistent failure to perform his duties, violation of canons of judicial ethics adopted by the supreme court of the state of Montana, or habitual intemperance.
>
> (4) The proceedings of the commission are confidential except as provided by statute.

¶12 The Legislature outlined the Commission's procedures for initiating an investigation and conducting formal proceedings. A

5

complaint from any citizen may cause the Commission to initiate an investigation. Section 3-1-1106(1)(a), MCA. The Commission is directed to notify the judicial officer of the citizen's complaint and of the initiation of an investigation. Section 3-1-1106(1)(b), MCA. If the Commission's investigation indicates that additional proceedings may be justified, "the Commission shall require the citizen who filed the original written complaint to sign a verified written complaint before conducting such additional proceedings." Section 3-1-1106(1)(a), MCA. Notice must again be given if a verified written complaint is filed. Section 3-1-1106(1)(b), MCA. This notice must be signed by the Commission and include the charges made, the grounds for the charges, and a statement that the judicial officer may file an answer. Section 3-1-1106(1)(b), MCA.

¶13 **Issue 1. Did the District Court err by modifying and then dismissing its writ of prohibition?**

¶14 The writ of prohibition Smartt obtained from the First Judicial District Court was grounded, in part, on allegations that the Commission had committed errors that violated Smartt's rights to due process and confidentiality. The alleged errors included the filing a of formal complaint against Smartt with the Montana Supreme Court based upon an unverified complaint by Harris that was not presented on the proper standardized form. The writ directed the Commission to "desist and refrain from any further action and proceedings in the matter relating to the Hon. Michael S. Smartt."

¶15 Smartt premises his appellate argument on an assumption that the District Court was correct as a matter of law to issue the

6

writ.  The Commission concedes that the court was correct to enjoin the Commission from instituting formal proceedings before it had obtained a verified complaint, but erred in using the writ of prohibition, which enjoined the commission from taking any action, including obtaining the required verifications.

¶16  The function of a writ of prohibition is to halt proceedings that are "without or in excess of the jurisdiction" of the entity exercising judicial functions.  Section 27-27-101, MCA.  The statutory definition reads:

> The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person exercising judicial functions when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person.

Section 27-27-101, MCA.  We have defined the term "jurisdiction" to mean "the power to hear and determine a particular case."  *State ex rel. Yuhas v. Board of Medical Examiners* (1959), 135 Mont. 381, 383, 339 P.2d 981, 982.  This Court examined the application of the writ of prohibition in *State ex rel. Lee v. Montana Livestock Sanitary Bd.* (1959), 135 Mont. 202, 339 P.2d 487, where we stated:

> [T]he writ of prohibition would not restrain a ministerial, executive or administrative function, no matter how illegal the act thereunder may be so long as the tribunal sought to be restrained has jurisdiction of the subject matter in controversy.  A mistaken exercise of such tribunal's acknowledged powers will not justify the issuance of the writ.  The writ of prohibition will not be issued as of course, nor because it may be the most convenient remedy.

*Lee*, 135 Mont. at 209, 339 P.2d at 491 (*citing State ex rel. White v. Board of State Land Com'rs* (Wash. 1901), 63 P. 532, 533).

7

¶17 Smartt relies on *State ex rel. Shea v. Judicial Standards Commission* (1982), 198 Mont. 15, 643 P.2d 210, where this Court issued a writ of prohibition to enjoin the Commission from acting in excess of its authority by investigating charges leveled in an unverified complaint. In *Shea*, the Commission was "arrested" by writ of prohibition from pursuing disciplinary proceedings against a justice of this Court for unpaid parking tickets amassed by his wife and the use of "intemperate" language in a dissenting opinion. Because the charges against Justice Shea did not amount to constitutionally proscribed "misconduct in office," this Court concluded that the Commission was operating outside of its jurisdiction. This Court did not issue the writ of prohibition solely because the Commission proceeded against Justice Shea without the statutorily required verified complaint, but, rather, primarily because the Commission exceeded its jurisdiction in investigating a charge that did not amount to "misconduct in office." Even if the complaint in *Shea* had been verified, the Commission still lacked subject matter jurisdiction over the substance of the complaint. In the present case, on the other hand, when the procedural requirement of a verified complaint was satisfied, there was no question but that the Commission had jurisdiction over the subject matter of the complaint.

¶18 Following the *Shea* decision, the 1983 Legislature amended § 3-3-1106, MCA, and clarified the procedural requirement that the Commission obtain a verified, written complaint when further proceedings against a judicial officer appear to be justified after

8

the Commission conducts an initial investigation. Sec. 1, Ch. 334, L. 1983. Section 3-3-1106, MCA, reads, in pertinent part:

> (1) (a) The commission, upon the filing of a written complaint by any citizen of the state, may initiate an investigation of any judicial officer in the state to determine if there are grounds for conducting additional proceedings before the commission. If the commission's investigation indicates that additional proceedings before the commission may be justified, the commission shall require the citizen who filed the original written complaint to sign a verified written complaint before conducting such additional proceedings.
>
> (b) The commission shall give the judicial officer written notice of the citizen's complaint and of the initiation of an investigation. Notice must also be given if a verified written complaint is filed and must include the charges made, the grounds for the charges, and a statement that the judicial officer may file an answer. The notice must be signed by the commission.

¶19 The record before us indicates that the District Court issued the writ of prohibition solely upon the basis of Smartt's allegations of procedural errors committed by the Commission. While Smartt concedes that the investigation of complaints against judicial officers is within the jurisdiction of the Commission, he claims that the Commission "abused its jurisdiction" by committing the procedural errors enumerated in the affidavit attached to his petition. Once the *ex parte* writ was issued, Smartt contends the Commission lost subject matter jurisdiction and had no authority to undertake any further action in the matter. Smartt, however, cites no authority for the proposition that procedural errors can be a basis for loss of jurisdiction.

¶20 Unlike the Commission's investigation of charges against Justice Shea that bore no relation to his conduct in office, the Harris complaint alleges that Smartt created a hostile work

9

environment by exposing county employees to sexually explicit material and used county equipment and services to view pornography on the Internet. Although the Commission acknowledges error in failing to obtain a verified complaint before initiating formal proceedings against Smartt, the Commission's original jurisdiction to investigate the Harris complaint is not disputed.

¶21 On August 15, 2001, the District Court ordered the writ to continue in force only until verified complaints were received from complainants. We agree with the court's observation that Article VII, Section 11 of the Montana Constitution grants the Commission jurisdiction to investigate misconduct on behalf of the judiciary, and a procedural error such as the failure to verify a complaint should not be allowed to subvert this constitutional mandate. Harris had verified his complaint by the time the court held its hearing on the writ of prohibition. We conclude that the court did not err when it modified the writ and allowed the Commission to proceed with its investigation on Harris' verified complaint.

¶22 Smartt next claims the Commission overstepped its authority by obtaining a copy of the CIB investigative report and further investigating allegations leveled by Troy Nelson Dye when Dye had not filed any sort of complaint with the Commission. The formal complaint prepared by the Commission alleged that Smartt used his judicial position to solicit or encourage sexual favors from Dye; Smartt unlawfully entered Dye's residence in Sidney, Montana; and Smartt sexually assaulted Dye.

¶23 By constitutional and statutory grant of rule-making authority, the Commission promulgated the Rules of the Judicial Standards Commission. *See* Art. VII, Sec. 11(2), Mont. Const.; § 3-1-1105(2), MCA. The Commission's Rule 10(b) states:

> A complaint shall not be a prerequisite to action by the
> Commission. The Commission may act on its own motion in

10

those cases where the Commission considers it appropriate.

Smartt urges us to declare this rule an unconstitutional extension of the Commission's jurisdiction on the grounds that Article VII, Section 11(2) of the Montana Constitution states only that "[t]he commission shall investigate complaints."

¶24 First, in addition to investigating complaints, the Constitution grants the Commission express authority to "subpoena witnesses and documents." Art. VII, Sec. 11, Mont. Const. We note that the Commission was in the process of investigating the complaint submitted by Harris when Chairman Warner learned that the Montana Department of Justice had undertaken an investigation of alleged wrong-doing by Smartt.

¶25 To determine whether the Commission's constitutional mandate to "investigate complaints" grants jurisdiction to investigate alleged judicial misconduct in the absence of a written complaint, as contemplated by Rule 10(b), we note that the term "complaint" has both common and legal meanings. A complaint can be "something that is the cause or subject of protest or outcry" as well as "a formal allegation against a party," according to Webster's New Collegiate Dictionary (1979). In the legal context, a complaint is the "initial pleading that starts a civil action." Black's Law Dictionary (7th Edition, 1999). While a complaint in this instance is lodged with the Commission and not a court of law, the use of the term in Article VII, Section 11 of the Montana

11

Constitution does not dictate any particular degree of legal formality.

¶26 The Legislature clarified that "a written complaint by any citizen of the state" may initiate an investigation of judicial misconduct by the Commission. Section 3-3-1106(1)(a), MCA. Only when the initial investigation indicates that additional proceedings before the Commission are warranted must the complaining citizen sign a verified complaint. Section 3-3-1106(1)(a), MCA.

¶27 The transcripts of the 1972 Constitutional Convention offer some guidance on the process required to bring matters of judicial wrong-doing before the Commission, as envisioned by the Convention delegates. In discussing the public policy concerns supporting the mandate of the Judicial Standards Commission, one delegate observed,

> [W]e've never had a commission of this type to which a practicing lawyer could go. The only way that you can get rid of a judge was through impeachment or wait until the next election and try to get somebody to run against him. This is a procedure where a letter can be written or a charge filed with this commission and ask them to look into it, investigate it, and, if the facts were found to be true then to take such action as [they] might deem appropriate.

Comments of Delegate Aronow, Constitutional Convention Transcript at 1126 (February 29, 1972). Delegate Aronow further explained that the intent of Article VII, Section 11 was to create "a committee of five, to investigate and look into any complaints that are made or any information that comes to the attention of the commission that a judge, either because of old age, other

12

disability, is not attending to his duties properly and provide for his retirement or removal from office." Comments of Delegate Aronow, Constitutional Convention Transcript at 1123 (February 29, 1972).

¶28 Delegate Berg noted that the Commission offered judicial officers accused of wrong-doing a forum where they could defend themselves:

> We are particularly interested in seeing to it that District judges and Supreme Court justices have some protection, not only of themselves in the case of senility or alcoholism, but frequently charges are made against judges which, of course, they are almost powerless to answer. If there is a commission before whom those charges can be filed, the judge has an opportunity to defend himself.

Comments of Delegate Berg, Constitutional Convention Transcript at 1125 (February 29, 1972).

¶29 Taken together, these excerpts depict a Commission conceived to investigate the truth of "a charge filed" or "a letter written" or "any information that comes to [its] attention" in order to make recommendations to the Montana Supreme Court regarding the discipline or removal of judicial officers. While the Commission's own Rule 10(a) directs that all complaints to the Commission must be in writing and verified by the complainant, Rule 10(b) states that the filing of a verified complaint is not a prerequisite to the Commission initiating an investigation of alleged judicial misconduct based upon information otherwise received.

¶30 The Constitution authorizes the Commission to investigate judicial wrong-doing. We see nothing in Rule 10(b) that prevents the Commission from carrying out its constitutional duty to

13

investigate complaints from Montana citizens, and nothing in the Montana Constitution that bars the Commission from acting on its own motion to investigate willful misconduct in office, persistent failure to perform judicial duties and violations of the canons of judicial ethics. We conclude that the Commission did not exceed its jurisdiction in obtaining a copy of the CIB file on Smartt by court order and undertaking its own investigation of the Dye allegations.

¶31 Smartt also contends that the Commission's initial notice to him of the Harris complaint was defective because it was signed by the Commission's executive secretary and not the Commission members themselves. Section 3-1-1106(1)(b), MCA, directs the Commission to sign the notice to a judicial officer that a *verified* complaint has been received. Since the letter signed by the executive secretary gave Smartt notice of the receipt of an *unverified* complaint, we conclude this initial notice did not violate the statutory requirements.

¶32 At the direction of the Commission to seek informal disposition of the complaints against Smartt, Chairman Warner met with Smartt and his attorneys on December 30, 2000. Three days before the meeting, Warner advised Smartt by letter that the Commission's investigation had expanded to include the Dye allegations. Smartt claims he was denied an adequate opportunity to prepare for the meeting because the Commission failed to provide him with a copy of the CIB report. Smartt also contends that Warner lacked authorization under the Commission's rules to seek

14

informal disposition of the Dye matter.  Finally, Smartt claims that Warner did not explicitly recommend at the December 30 meeting that Smartt resign from his position as Justice of the Peace, but was on a "fishing expedition" regarding the Dye allegations.

¶33  On November 21, 2000, the Commission directed Warner to meet with Smartt in accordance with the Commission's Rule 10(g), which states:

> After receipt of a complaint or of information indicating that a judge may have been guilty of conduct which might warrant discipline, or that a judge may be disabled, the Commission, before voting to hold a formal hearing, may delegate to one or more of its members the authority and responsibility to personally and confidentially confer with the  judge subject to the inquiry, and to make informal recommendations to the judge concerning the subject  matter  of  the  inquiry  and  a  satisfactory disposition  thereof.   If  the  judge  agrees  to  the Commission's  suggested  disposition,  the  matter  may  be disposed of on the basis of the agreement reached.  If such agreed disposition is made on the basis that it be made public,  the Commission shall file a report of such disposition in the office of the Clerk of the Supreme Court and it shall become a matter of public record.

Smartt  is  correct  that  the  Commission's  formal  delegation  of authority to Warner to seek informal disposition of the complaint against Smartt occurred before the Commission learned of the Dye allegations.  Prior to the December 30 meeting, Warner informed the Commission of the contents of the CIB file, and proceeded in accord with  the  Commission's  directive.   Because  the  purpose  of  the meeting was to attempt to resolve serious complaints against a judicial officer in a confidential manner before initiating formal, public proceedings, Smartt's  claim  of  insufficient  notice  lacks merit.    The  meeting  was  not  a  criminal  proceeding  and  the Commission  had  not  established  a  time  limit  for  an  informal

15

resolution. Immediately following the meeting, Warner mailed a copy of the CIB file to Smartt. Smartt formally responded to the Dye allegations on January 28, 2001, and formal proceedings were initiated thereafter. We conclude that Warner acted with the Commission's authorization in pursuing informal disposition of the complaints against Smartt.

¶34 Finally, Smartt objects to the fact that Dye's formal, verified complaint was not submitted on the standardized form set forth in the Commission's rules, was drafted by Gould, the attorney hired by the Commission to prepare the formal complaint against Smartt, and did not identify which specific sections of the Canons of Judicial Ethics Smartt allegedly violated. As stated previously, the form of a complaint from a Montana citizen alleging judicial misconduct is not critical to the Commission's fulfilling its constitutional mandate. And, Smartt has identified no policy, statute or rule of the Commission that was abrogated by Gould in providing assistance in drafting Dye's complaint.

¶35 By Order on October 25, 2001, the District Court dismissed Smartt's petition for a writ of prohibition. We reiterate that Article VII, Section 11 of the Montana Constitution requires that the Commission investigate complaints and make recommendations to this Court concerning allegations made against any justice or judge for "willful misconduct in office, willful and persistent failure to perform his duties, violation of canons of judicial ethics . . . or habitual intemperance." We hold that the Commission acted within its jurisdiction throughout its investigation of Smartt.

16

The District Court was correct as a matter of law to dismiss the writ of prohibition.

¶36 **Issue 2.  Did the District Court err by granting summary judgment in favor of the Commission?**

¶37  The District Court granted the Commission's motion for summary judgment on four issues raised by Smartt in his affidavit supporting his petition for the writ of prohibition.  On appeal, Smartt does not dispute the factual basis for the court's judgment.  Instead, he contends that he raised only one issue in his petition, which was whether the Commission should be barred from further action due to lack of subject matter jurisdiction in the absence of verified complaints, and maintains that the Commission's "motion for summary judgment was a cleverly contrived and skillfully executed attempt to raise nonexisting issues."

¶38  At a loss to conceive how the District Court could commit reversible error by dismissing ancillary issues that both parties agree are immaterial or irrelevant to the case, we affirm the court's Order.

## CONCLUSION

¶39  A writ of prohibition is an extraordinary remedy available to enjoin a judicial entity from the inappropriate exercise of jurisdiction when no other plain, speedy and adequate legal remedy exists.  The District Court was correct as a matter of law to dismiss the writ because at no time during its investigation did the Commission act without or in excess of its jurisdiction.

¶40  Affirmed.

17

                                              /S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE